# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **OPUS SOUTH CORPORATION,** *et al.*,[1] | Case No. 09-_____ ( ) |
| **Debtors.** | **Joint Administration Pending** |

**EMERGENCY MOTION OF THE DEBTORS FOR ORDERS (1) APPROVING SALE OF CERTAIN ASSETS OF THE DEBTORS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (2) AUTHORIZING THE ASSUMPTION, ASSIGNMENT, AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (3) AUTHORIZING SURCHARGE PURSUANT TO 11 U.S.C. § 506(c), (4) APPROVING BIDDING PROCEDURES IN ADVANCE OF AN AUCTION, AND (5) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby move the Court (the "**Motion**") on an emergency basis for entry of an order (1) approving the sale of substantially all assets of the Debtors (collectively, the "**Purchased Assets**"), <u>whether individually or as one or more packages, to one or more purchasers</u> at an auction free and clear of all liens, claims, encumbrances, and other interests pursuant to Sections 105, 363(b), (f), and (m) of Title 11 of the United States Code (the "**Bankruptcy Code**"), (2) authorizing the assumption, assignment, and sale of certain executory contracts and unexpired leases pursuant to Sections 363 and 365 of the Bankruptcy Code, (3) authorizing the surcharge of secured lenders' collateral pursuant to Section 506(c) of the Bankruptcy Code, (4) approving bidding procedures in advance of an auction, and (5) granting related relief.  **Although this Motion is filed on an emergency basis, the Debtors are only requesting on an emergency basis that the Court set a hearing on or before May 7, 2009, to approve the Bidding Procedures and to set the Auction and other related dates, including the Final Hearing.   No substantive relief**

---

[1] The Debtors are the following entities: Opus South Corporation; Opus South Contractors, L.L.C.; Altaire Village, L.L.C.; Clearwater Bluff, L.L.C.; Calm Waters, L.L.C.; Waters Edge One, L.L.C.; Laguna Riviera Ventures, L.L.C.; 400 Beach Drive, L.L.C.; Nature Coast Commons, L.L.C.; Shoppes of Four Corners, L.L.C.; and 8th & 14th, L.L.C.

**hereunder is being sought at the first-day hearing.** In support of this Motion, the Debtors respectfully state as follows:

## I.
## STATUS OF THE CASE AND JURISDICTION

1.  On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary Chapter 11 bankruptcy petition pursuant to the Bankruptcy Code.

2.  The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.  No request has been made for the appointment of a trustee or examiner and a creditors' committee has not been appointed in these cases.

4.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

5.  The statutory predicates for the relief sought herein are Sections 105, 363, 365, and 506(c) of the Bankruptcy Code.

## II.
## BACKGROUND

6.  Opus South Corporation ("**Opus South**") was incorporated in Florida on December 8, 1981. Opus South and its affiliated Debtor entities are members of The Opus Group, a non-debtor entity, and each focus on acquiring, constructing, operating, managing, leasing, and/or disposing of real estate development projects primarily located in the southeastern United States. Headquartered in Atlanta, Georgia, the Debtors have collectively developed millions of square feet of real estate space by utilizing their in-house expertise in office, industrial, retail, multi-family, government, and institutional projects.

7.     A more detailed factual background of the Debtors' businesses and operations, as well as the commencement of these Chapter 11 cases, is more fully set forth in the *Declaration of Anne Marie Solberg in Support of the Debtors' Chapter 11 Petitions and Requests for First-Day Relief* filed contemporaneously herewith and incorporated herein by reference.

## III.
## RELIEF REQUESTED

8.     By this Motion, the Debtors request the entry of certain orders (a) approving, in accordance with the terms of the APA (as defined below), the sale of the Purchased Assets, whether individually or as part of one or more packages, to one or more purchasers at an auction free and clear of all liens, claims, encumbrances, and other interests pursuant Sections 105, 363(b), (f), and (m) of the Bankruptcy Code, (b) authorizing the assumption, assignment, and sale of the Assigned Contracts (as defined below) pursuant to Sections 363 and 365 of the Bankruptcy Code, (c) authorizing the surcharge of secured lenders' collateral pursuant to Section 506(c) of the Bankruptcy Code, (d) approving the Bidding Procedures in advance of the proposed Auction (all as defined below), and (e) granting related relief as the Court shall deem just and proper.  In addition, the Debtors request that the Court's order approving the Bidding Procedures provide that each secured lender of any Debtor shall be deemed a Qualified Bidder for all purposes thereunder.

9.     The Debtors have formulated the following proposed timeline to effectuate the Transaction contemplated herein, and seek hearings and deadlines to be set as follows, to the extent the Court's calendar permits:

| Case Day | Activity/Deadline |
|---|---|
| On or before May 7, 2009 | • Hearing on Bidding Procedures<br>• Objections due two (2) days prior to hearing |
| June 8, 2009 | • Qualified bid deadline |
| June 9, 2009 | • Cure Notices sent |
| June 12, 2009 | • Auction |
| June 15, 2009 | • Last day to object to Transactions |
| On or before June 22, 2009 | • Final hearing |
| On or before June 29, 2009 | • Projected closing of Transactions |

## A. The Asset Purchase Agreement.

10. The Debtors anticipate that without continuing liquidity, and given the present credit crisis and the inability of real estate developers to obtain additional financing or refinance existing indebtedness, the value of the Debtors' assets will rapidly diminish unless sold to a third party. After consideration of all options, the Debtors have prepared a form *Asset Purchase Agreement* (the "**APA**")[2] to be used for the sale of the Purchased Assets to one or more purchasers (each sale a "**Transaction**" and collectively the "**Transactions**") at an auction. A copy of the proposed form APA is attached hereto as Exhibit "1" and incorporated herein by reference.

11. The Debtors understand that the competitive bidding process regarding the sale of the Purchased Assets must take place post-petition to satisfy the requirements of the Bankruptcy Code; however, the Debtors believe that such process must move quickly to ensure that the value of the Purchased Assets is maximized. Any delay will likely result in a reduced sale price given the deteriorating real estate market in the southeastern United States. The Debtors, therefore, believe that value will be maximized by conducting an auction and closing any Transactions as soon as is practicable.

---

[2] Capitalized terms used herein and not otherwise defined herein have the meaning ascribed thereto in the APA.

**B.** **The Assumption, Assignment, and Sale of Assigned Contracts.**

12. Pursuant to Section 365 of the Bankruptcy Code, the Debtors shall assign to a purchaser, and the purchaser shall assume from the Debtors, the Assigned Contracts. The cure amounts, if any, as determined by the Bankruptcy Court, necessary to allow assumption and assignment under Section 365 of the Bankruptcy Code of the Assigned Contracts shall be paid by the applicable purchaser (or the purchaser shall have delivered into escrow on terms reasonably acceptable to the Debtors and such purchaser amounts sufficient to pay any claim therefore that remains disputed as of the Closing, as such amount shall have been determined by the Bankruptcy Court) at or before the Closing (except as otherwise agreed to by the other party to the Assigned Contracts) and, except as set forth below, the Debtors shall have no liability for any such cure amount. The cure amounts to be paid by any purchaser pursuant to an executed APA are hereinafter sometimes referred to as the "**Cure Amounts**."

13. On or before June 9, 2009, the Debtors shall file and serve a notice of proposed Cure Amounts (the "**Cure Notice**") on the non-Debtor parties to such Assigned Contracts (the "**Contract Parties**"). Thereafter, the Debtors propose that the deadline for the Contract Parties to object to the Debtors' proposed Cure Amounts as listed in the Cure Notice(s) should be set on that date which is ten (10) days after the filing of such Cure Notice. Any objection to the Cure Amounts which is timely filed and served by any Contract Parties in accordance with the Cure Notice, and which is not otherwise resolved by the parties, shall be heard by the Court at the Final Hearing.

14. Pursuant to the form APA, the applicable purchaser shall be responsible for satisfying the Cure Amounts as described above or otherwise set by final order of the Court. The applicable purchaser shall further be responsible for providing adequate assurance of future

performance pursuant to Section 365(b) of the Bankruptcy Code in connection with the proposed assumption and assignment of any Assigned Contract.

## C.    Surcharge of Secured Lenders' Collateral.

15.    Because the sales requested hereby are being pursued by the Debtors for the benefit of their various secured lenders, the Debtors request that each property sold be surcharged in an amount not to exceed $50,000, exclusive of applicable broker fees, per property pursuant to Section 506(c) of the Bankruptcy Code.  Such surcharge is necessary and appropriate in order to compensate the Debtors for their reasonable fees and expenses, including attorneys' fees and expenses, incurred in facilitating sales for the direct benefit of the secured lenders.  In addition, the Debtors request that each property sold be surcharged pursuant to Section 506(c) in the amount of and in order to pay applicable broker fees related to the sale of such property.

## D.    Bidding Procedures.

16.    The Debtors propose that the Court approve the following specific bidding procedures (the "**Bidding Procedures**"):

    a.    **Potential Bidder**.    Parties interested in participating in the bidding process (a "**Potential Bidder**") will be required to deliver to the Debtors (to the extent not already delivered) the following:

        i.    An executed confidentiality agreement in form and substance acceptable to the Debtors; and

        ii.    The most current audited (if available) and the latest unaudited financial statements as well as financial information evidencing the Potential Bidder's ability to close the transaction that meets with the Debtors' satisfaction.

    As promptly as practicable after a Potential Bidder delivers the above information, the Potential Bidder shall be eligible to commence due diligence with respect to the assets as defined in the APA.  The Debtors reserve the right to refuse any Potential Bidder access to the due diligence materials if such access is deemed to be harmful to the Debtors' estates.

b.    **Deadline for Submission of Bids**.  The deadline for submitting any and all competing bids shall be on or before **June 8, 2009, at 5:00 p.m. (Prevailing Delaware Time)** (the "**Bid Deadline**").

c.    **Submission of Bids**.  In order to qualify as a potential Qualified Bidder (as defined below) of any Purchased Assets, a Potential Bidder must timely submit a written bid (a "**Qualified Bid**") for a portion or all of the Purchased Assets that:

    i.    Contains an executed asset purchase agreement in substantially the same form as set forth in <u>Exhibit "1"</u> hereto, with all modifications thereto, wherein the Potential Bidder proposes:

        1.    Which of the Purchased Assets the Potential Bidder seeks to acquire; and

        2.    Which of the Debtors' executory contracts and unexpired leases such bidder seeks to assume and the proposed terms of cure (a "**Modified APA**").

    ii.    The Modified APA shall be accompanied by a blacklined copy of the Modified APA showing all changes made to the APA.

    iii.    The Modified APA shall not contain:

        1.    A request for any type of expense reimbursement or similar type of payment; or

        2.    Any due diligence, financing contingencies, or other contingency of any kind.

    iv.    Evidence of authorization and approval from such Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the Modified APA.

    v.    Information regarding such Potential Bidder's financial capability to consummate the transactions contemplated by the Modified APA containing such financial and other information that will allow the Debtors to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by the Modified APA, including, without limitation:

        1.    The most current audited (if available) and latest unaudited financial statements (the "**Financial Information**") of such Potential Bidder; or

        2.    If the Potential Bidder is an entity formed for the purpose

of acquiring Purchased Assets then:

    A.    The Financial Information of the equity holder(s) of the Potential Bidder or such other form of financial disclosure acceptable to the Debtors; and

    B.    The written commitment of such equity holder(s) to be responsible for the Potential Bidder's obligations in connection with the acquisition of Purchased Assets.

vi.    Discloses fully the identity of each entity that will be bidding for Purchased Assets or otherwise participating in connection with such Qualified Bid, and the complete terms of any such participation.

vii.    Discloses fully the terms of the proposed employment of any of Debtors' employees, management, or officers in connection with such bid.

viii.    Is accompanied by a cash deposit in an amount equal to 10% of the total purchase price set forth in the Modified APA (a "**Deposit**").

ix.    Is delivered to Debtors' counsel such that they are received by the close of business on the Bid Deadline by the following: (1) Scott Cousins, Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801; and (2) Matthew Gensburg, Greenberg Traurig, LLP, 77 West Wacker Drive, Suite 3100, Chicago, Illinois 60601 (collectively, the "**Notice Parties**").

d.    **Qualification of Bid**. After a Potential Bidder has delivered a bid, the Debtors will determine whether such Potential Bidder is a "**Qualified Bidder**" and such bid is a "**Qualified Bid**." Promptly after making such determination, the Debtors will advise such bidder of this determination. The Debtors reserve the right to reject any bid.

e.    **Auction**. The Debtors will conduct an auction to determine the highest or best bid for the Purchased Assets beginning at **10:00 a.m. (Prevailing Delaware Time) on June 12, 2009, at the law offices of Greenberg Traurig, LLP located at The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801** (the "Auction"). The Auction may be adjourned by announcement of the adjournment at the Auction to those parties who appear at the Auction. Each Qualified Bid other than the opening bid is referred to as a "**Subsequent Bid.**" At the conclusion of the Auction, or as soon thereafter as practicable, the Debtors shall: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the process, including those factors affecting the speed and certainty of consummating the

Transactions; (ii) identify the highest or otherwise best offer(s) for each Purchased Asset received at the Auction (the "**Highest Bid**", and the bidder(s) making such bid, the "**Highest Bidder**"); and (iii) designate any Back-Up Bidders (as defined below).

f.  **Auction Procedures**.  The Auction will be conducted as follows:

   i.   Only the Debtors, any secured lender of any Debtor, and any Qualified Bidder who has timely submitted a Qualified Bid (and the legal and financial advisers to each of the foregoing) may attend the Auction, and only Qualified Bidders may make any subsequent Qualified Bids at the Auction.

   ii.  At least one (1) business days prior to the Auction, each Qualified Bidder who has submitted timely a Qualified Bid must inform the Debtors whether it intends to participate in the Auction.  Failure to comply with this provision may preclude an otherwise Qualified Bidder from attending and/or participating in the Auction.  As soon as is practicable before the Auction, the Debtors must provide copies of the Qualified Bid the Debtors believe is the highest or otherwise best offer to all Qualified Bidders who are eligible to attend and participate in the Auction.

   iii. All Qualified Bidders who have submitted a Qualified Bid shall be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each Subsequent Bids will be fully disclosed to all other bidders throughout the entire Auction.

   iv.  All Qualified Bidders attending the Auction shall agree to remain ready, willing, and able to close a Transaction with respect to specific Purchased Assets under the terms of their last Qualified Bid submitted at such Auction with respect to specific Purchased Assets as the back-up bidder (the "**Back-Up Bidder**" and such last bid, the "**Back-Up Bid**") until the earlier of (1) the close of the Transaction with respect to the specific Purchased Assets, or (2) June 30, 2009, and shall close if the Highest Bidder fails to close, if, as, and when determined by the Debtors to be the new Highest Bidder.

   v.   The Debtors may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order entered in connection herewith.

vi.    Bidding at the Auction shall begin with the highest or otherwise best Qualified Bid. The bidding shall be in minimum increments to be set by the Debtors at the Auction, in consultation with any committee appointed in this case. The Auction shall also continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids.

vii.    The credit bid rights of any secured party shall be preserved in accordance with Section 363(k) of the Bankruptcy Code. Any secured party of any Debtor shall be deemed a Qualified Bidder and will not be required to provide the information or a deposit as is otherwise set forth herein.

g.    **Final Hearing**. The Debtors request that the Court schedule a hearing to approve the Transactions (the "**Final Hearing**") on **June 22, 2009, at  :   .m. (Prevailing Delaware Time)**. All objections to any Transaction shall be filed with the Bankruptcy Court and served on the Notice Parties on or before **June 15, 2009 at 5:00 p.m. (Prevailing Delaware Time)**. The Highest Bidder(s) and any Back-Up Bidder(s) must produce a competent witness at the Final Hearing (and any subsequent hearing) to provide testimony, if necessary, to establish adequate assurance of future performance by each such bidder under the unexpired leases and executory contracts to be assigned to such bidder, to the extent required by Sections 365(b) of the Bankruptcy Code. At the Final Hearing, the Debtors will request that the Court approve each Transaction with regard to the Back-Up Bidder in the event the contemplated Transaction with the Highest Bidder does not timely close; in which case such Back-Up Bidder shall become the Highest Bidder without further order of the Court.

h.    **Closing.** Any closing of a Transaction shall take place on or before **June 29, 2009**, except upon the waiver of this requirement by the Debtors.

i.    **Return of Deposits**. The Deposits of all Qualified Bidders (except for the Highest Bidder) shall be held in an interest-bearing escrow account. Notwithstanding the foregoing, any Deposit, if any, submitted by the Highest Bidder, together with interest accrued thereon, shall be applied against the payment of the Purchase Price upon closing of the Transaction with the Highest Bidder. Except as otherwise provided in a Modified APA and herein, all Deposits (together with interest accrued thereon) shall be returned to each Qualified Bidder not selected by the Debtors as either the Highest Bidder or the Back-Up Bidder within five (5) business days of the adjournment of the Auction. The Deposit of the Back-Up Bidder, to the extent not designated as the Highest Bidder, shall be returned to the Back-Up Bidder within five (5) business days of the date of closing the Transaction with respect to the related Purchased Property.

17. To ensure that all parties-in-interest receive adequate notice of the Auction, not later than two (2) days after the entry of an order approving the portion of this Motion relating to the Bidding Procedures, the Debtors will serve a copy of any order of the Court approving the Bidding Procedures and scheduling the Auction and the Final Hearing (the "**Procedures Order**"), substantially in the form attached to this Motion as Exhibit "2," via first-class United States mail, postage prepaid to (a) the Office of the United States Trustee for the District of Delaware, (b) all entities known to have expressed a *bona fide* interest in acquiring any of the Purchased Assets within the last six months, (c) federal, state, and local regulatory authorities (including taxing authorities) with jurisdiction over the Debtors, and (d) all other known parties-in-interest in these bankruptcy cases (including any party who has entered an appearance and request for service of papers). The Debtors submit that all parties-in-interest will have adequate notice of the Auction and the proposed Transactions.

## IV.
## BASIS FOR RELIEF REQUESTED

18. The Debtors have determined that a disposition of the Debtors' operating assets is necessary to maximize available value for all parties-in-interest in these cases. The Debtors have also determined that a reorganization is not likely to be a viable option due to the Debtors' lack of liquidity to appropriately fund continuation of their businesses. The Debtors assert that the proposed Transactions are in the best interests of their estates and their creditors and hereby request that the Court approve the relief requested herein.

### A. Disposition of the Purchased Assets is Authorized Under Section 363(b) of the Bankruptcy Code.

19. Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(l). Section 105(a) provides in relevant part that "[t]he Court

may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

20.     Disposition of the Purchased Assets should be authorized pursuant to Section 363(b) of the Bankruptcy Code if a sound business justification exists for doing so. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (*citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272, 278 (N.D. Ga. 1985) ("[A] debtor seeking approval for [a sale under section 363(b)] bears the burden of articulating a sound business justification..."); *In re Tom's Foods, Inc.*, 2005 WL 3022022 at *2 (Bankr. M.D. Ga. 2005) ("It is now generally accepted that section 363 allows such sales in chapter 11, provided, however that the sale proponent demonstrates a good, sound business justification for conducting the sale..."); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991). The *Delaware & Hudson Railway* court rejected the pre-Code "emergency" or "compelling circumstances" standard, finding the "sound business purpose" standard applicable and, discussing the requirements of that test under *McClung* and *Lionel*, observing:

> A non-exhaustive list of factors to consider in determining if there is a sound business purpose for the sale include: the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition of the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the assets; and whether the asset is decreasing or increasing in value.

124 B.R. at 176. The court in *In re Tom's Foods* further held that, in addition to demonstrating a

sound business justification, the sale proponent must also show "that there has been adequate and reasonable notice of the sale, that the sale has been proposed in good faith, and that the purchase price is fair and reasonable." 2005 WL 3022022 at *2.

21.     The Debtors have proposed to sell the Purchased Assets after thorough consideration of all viable alternatives, and have concluded that such disposition is supported by a number of sound business reasons. The Debtors have determined that a reorganization rather than the sale and lease of their assets is not a viable option due to the Debtors' insufficient liquidity to continue operating the businesses. Hence, the Debtors have determined that a disposition of their assets herein provides the best and most efficient means for the Debtors to maximize the value of their estates and avoid further deterioration in value given the declining real estate market in the southeastern United States. In addition, given the Debtors' lack of liquidity, and, hence, their inability to pay the costs associated with maintaining and/or completing their various projects, a quick sale will minimize the losses of the Debtors' business operations.

22.     Based on the foregoing, the disposition of the Purchased Assets is justified by sound business reasons and is in the best interests of the Debtors and their estates. Accordingly, pursuant to Section 363(b) of the Bankruptcy Code, the Debtors request approval of the sale and lease of the Purchased Assets to the Highest Bidders as set forth herein.

**B.      Sale of the Purchased Assets Free and Clear of Liens, Claims, and Interests is Authorized Under Section 363(f) of the Bankruptcy Code.**

23.     Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

> (1)      applicable nonbankruptcy law permits sale of such property free and clear of such interest;

> (2)      such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in a bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

24.     As quoted above, Section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests." The term "any interest," as used in Section 363(f), is not defined in the Bankruptcy Code. *Folger Adam Security v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000). In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest." *Id.*, at 258. The court observed that while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from ownership of the property." *Id.* (citing 3 Collier on Bankruptcy 363.06[1]).

25.     As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger Adam*, the scope of Section 363(f) of the Bankruptcy Code is not limited to *in rem* interests. Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger Adam*, 209 F.3d at 258.

26.     Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Purchased Assets to one or more purchasers free and clear of all interests, except with respect to any interests that are Assumed Liabilities under a Modified APA. *See In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 497, 506 (Bankr. N.D. Ala. 2002) ("Since the five conditions listed in 11 U.S.C. § 363(f)

are phrased in the disjunctive, property may be sold free and clear of interests if any one of the five conditions is satisfied.") *See also Citicom Homeowners Servs., Inc. v. Elliot,* 94 B.R. 343, 345 (E.D. Pa. 1988).

27.     The Debtors submit that each interest that is not an Assumed Liability satisfies at least one of the five conditions in Section 363(f) of the Bankruptcy Code, and that any such interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the sale, subject to any claims and defenses the Debtors may possess with respect thereto. The Debtors accordingly request authority to convey the Purchased Assets to a purchaser free and clear of all interests (except as otherwise provided in a Modified APA).

28.     The Debtors have conducted a UCC search to determine possible lienholders of the Purchased Assets in conjunction with the proposed sale of the Purchased Assets.[3] The Debtors have served such purported lienholders notice of this Motion, and will serve such parties with notice of any order approving the relief requested by this Motion.

29.     Accordingly, this Court should approve the sale of the Purchased Assets to the Highest Bidder, free and clear of interests under Section 363(f) of the Bankruptcy Code.

## C.    The Bidding Procedures Provided Herein Are Consistent and Appropriate in the Context of Bankruptcy Transactions.

30.     Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets of the estate. *See, e.g., In re Friedman's, Inc.,* 336 B.R. 891, 895 (Bankr. S.D. Ga. 2005); *Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.),* 147 B.R. 650, 656-57 (Bankr. S.D.N.Y. 1992). The paramount goal in any proposed sale of property of the estate is

---

[3] Nothing herein shall be deemed an admission of validity, extent, priority or perfection.

to maximize the proceeds received by the estate. *See Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 (same); *Cello Bag Co. v. Champion Int'l Corp. (In re Atlanta Packaging Products, Inc.)*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988) (same).

31.     In that regard, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., In re Montgomery Ward Holding Corp.*, Case No. 97-1409 (PJW) (Bankr. D. Del. Aug. 6, 1997); *In re Fruehauf Trailer Corp.*, Case No. 96-LS63 (PJW) (Bankr. D. Del. Feb. 26, 1997); *Integrated Resources*, 147 B.R. at 659; *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) ("Competitive bidding yields higher offers and thus benefits the estate. Therefore, the objective is 'to maximize the bidding, not to restrict it'").

32.     The Bidding Procedures proposed herein will provide a framework for the Debtors to entertain Qualified Bids for Purchased Assets and, if they receive such Qualified Bids, to conduct the Auction in a fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction. This should increase the likelihood that the Debtors will receive the greatest possible consideration for the Purchased Assets. The Bidding Procedures also set forth a schedule for achieving these objectives in an expeditious manner, balancing the Debtors' desire to maximize recovery for the benefit of the estates, with the need to move quickly to avoid any further deterioration in value.

**D.     The Court Should Approve the Assumption, Assignment, and Sale of the Assigned Contracts.**

33.     As required by the APA, the Debtors request approval of the ability to assume,

assign, and sell the Assigned Contracts to a purchaser.

34. The Assigned Contracts are those contracts or leases that the Debtors seek approval to assume and assign to a purchaser as part of a Transaction under an executed Modified APA. The Debtors further request that the Order provide that the Assigned Contracts will be assigned to, and remain in full force and effect for the benefit of, the applicable purchaser, notwithstanding any provisions in the Assigned Contracts, including those described in Sections 365(b)(2) and (f)(l) and (3) of the Bankruptcy Code, that prohibit such assignment.

35. Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
> (A)    the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B)    adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease. 11 U.S.C. § 365(f)(2).

11 U.S.C. § 365(f)(2).

36. Under Section 365(a), a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing that:

> (b)(l) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
>
> (B)    compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary

loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

37.     Although Section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a debtor-in-possession's decision to assume an executory contract, it is well established that the decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. *See In re Taylor*, 913 F.2d 102 (3d Cir. 1990); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36 (3d Cir. 1989); *In re Gardinier, Inc.*, 831 F.2d 974, 975 n.2 (11th Cir. 1987). Accordingly, assumption or rejection of any executory contract is appropriate where the assumption would benefit the estate or the rejection would allow the trustee to avoid burdensome obligations previously incurred by the Debtor. *In re Diamond Mfg. Co., Inc.*, 164 B.R. 189, 198 (Bankr. S.D. Ga. 1994). *See also Sharon Steel*, 872 F.2d at 40.

38.     The assumption, assignment, and sale of the Assigned Contracts is an integral part of the disposition of the Purchased Assets and, as stated above, such disposition provides the maximum available to benefit the Debtors' estates.  To the extent no objection is filed with regard to a particular Cure Amount, such Cure Amount shall be binding on the Contract Party to the applicable contract or lease. The payment of the Cure Amounts will be in full and final satisfaction of all obligations to cure defaults and compensate the Contract Parties for any pecuniary losses under such contracts or leases pursuant to Section 365(b)(1) of the Bankruptcy Code.

39.     Cure Amounts properly disputed by any contracting party to an Assigned Contract will be resolved by the Court at the Final Hearing.

40.     As set forth in this Motion, each purchaser is responsible for providing evidence

of "adequate assurance of future performance" to the extent required in connection with the assumption and assignment of any Assigned Contract. The meaning of "adequate assurance of future performance" for the purpose of the assumption of executory contracts and unexpired leases pursuant to Section 365 of the Bankruptcy Code depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See In re DH4, Inc.*, 2007 WL 3283781 at *4 (Bankr. S.D. Fla. 2007) ("What constitutes 'adequate assurance of future performance' must be determined by the facts of the proposed assumption"); *Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985). To the extent necessary, each purchaser shall provide evidence of its ability to provide adequate assurance to the contracting parties to the Assigned Contracts at the Final Hearing.

## E.    <u>Surcharge is Appropriate.</u>

41. Section 506(c) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property." 11 U.S.C. § 506(c). Section 506(c) is an exception to the general rule that post-petition administrative expenses and other general costs of reorganization ordinarily may not be charged to or against a secured creditor's collateral. *See In re Visual Indus., Inc.*, 57 F.3d 321, 325 (3d Cir. 1995).

42. The requirements of Section 506(c) are well settled in the Third Circuit: "Our decisions have clarified that to recover expenses under section 506(c), a claimant must

demonstrate that (1) the expenditures are reasonable and necessary to the preservation or disposal of the property and (2) the expenditures provide a direct [sic] benefit to the secured creditors." *In re Visual Indus., Inc.*, 57 F.3d at 325 (quoting *In re C.S. Assocs.*, 29 F.3d 903, 906 (3d Cir. 1994)). The types of post-petition costs and expenses that would generally be found necessary to the preservation or disposition of the subject property and benefit the holder of the security interest include, among others, appraisal fees, auctioneer fees, advertising costs, moving expenses, storage charges, payroll of employees directly and solely involved with the disposition of the subject property, maintenance and repair costs, and marketing costs. *See In re Visual Indus., Inc.*, 57 F.3d at 325.

43.    In addition to being necessary and reasonable, the expenses in question must provide a direct benefit to the secured creditor. To satisfy this prong of Section 506(c), the claimant must show (a) in quantifiable terms that it expended funds directly to protect and preserve the collateral, (b) that such funds were expended primarily for the benefit of the secured creditor, and (c) that the creditor directly benefited from the expenditure. *See In re Visual Indus., Inc.*, 57 F.3d, at 325-326.

44.    Finally, a claim under Section 506(c) "is not an administrative claim, but an assessment against a secured claim which takes precedence over even the secured claim against which the recovery has been charged." *In re Mall One Associates, L.P.*, 187 B.R. 476, 480 (Bankr. E.D. Pa. 1995) (citations omitted).

45.    The Debtors request that each property sold be surcharged in an amount not to exceed $50,000, exclusive of applicable broker fees, per property pursuant to Section 506(c) of the Bankruptcy Code. Such surcharge is necessary and appropriate in order to compensate the Debtors for their reasonable fees and expenses, including attorneys' fees and expenses, incurred in facilitating sales for the direct benefit of the secured lenders. In addition, the Debtors request

that each property sold be surcharged pursuant to Section 506(c) in the amount of and in order to pay applicable broker fees related to the sale of such property.

46.     The expenditures sought to be paid are reasonable and necessary for the preservation and/or disposal of the properties and provide a direct benefit to the secured lenders. Based upon the applicable authority in the Third Circuit, surcharge of the secured lenders' collateral is appropriate under the facts and circumstances set forth herein and as are present in these jointly administered bankruptcy cases.

47.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

### V.
### NOTICE

48.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known:  (a) the Office of the United States Trustee; (b) the Debtors' pre-petition secured lenders; (c) the Debtors' consolidated forty (40) largest unsecured creditors as set forth in the list filed with the Debtors' petitions; (d) the Office of the United States Attorney General for the District of Delaware; and (e) the Internal Revenue Service.  **Although this Motion is filed on an emergency basis, the Debtors are only requesting on an emergency basis that the Court set a hearing on or before May 7, 2009, to approve the Bidding Procedures and to set the Auction and other related dates, including the Final Hearing.  No substantive relief hereunder is being sought at the first-day hearing.**  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that this Court enter an order (a) approving the sale of the Purchased Assets, whether individually or as part of one or more packages, to one or more purchasers at an auction free and clear of all liens, claims, encumbrances, and other interests pursuant Sections 105, 363(b), (f), and (m) of the Bankruptcy Code, (b) authorizing the assumption, assignment, and sale of the Assigned Contracts (as defined below) pursuant to Sections 363 and 365 of the Bankruptcy Code, (c) authorizing the surcharge of secured lenders' collateral pursuant to Section 506(c) of the Bankruptcy Code, (d) approving the Bidding Procedures in advance of the proposed Auction (all as defined below), and (e) granting related relief as the Court shall deem just and proper.

Dated: April 22, 2009

GREENBERG TRAURIG, LLP

By: _Victoria W Counihan_

Scott D. Cousins (DE Bar No. 3079)
Victoria W. Counihan (DE Bar No. 3488)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: cousinss@gtlaw.com
       counihanv@gtlaw.com

-and-

Clifton R. Jessup, Jr.
Bryan L. Elwood
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-5938
Email: jessupc@gtlaw.com
       elwoodb@gtlaw.com

Proposed Counsel for the Debtors
   and Debtors-in-Possession