# Exhibit "1"

## APA

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement") is made and entered into as of *[_____, 200__]*, between and among *[_____, a _____]* ("Seller"), and *[_____, a _____]* ("Purchaser").

### WITNESSETH:

WHEREAS, Seller is a debtor-in-possession under Title 11 of the United States Code, 11 U.S.C. Section 101 et seq. (the "Bankruptcy Code") and filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on *[_____]* (the "Petition Date") in the United States Bankruptcy Court for the District of *[_____]* (the "Bankruptcy Court") (Case No. *[_____]*) (the "Bankruptcy Case"); and

WHEREAS, Seller presently owns *[and operates a _____-unit apartment complex/approximately _____ square foot office/warehouse/retail center][approximately _____ acres of unimproved real property]* located in *[_____ County, _____]* (the "Property"); and

WHEREAS, certain terms used in this Agreement are defined in Article 1 below; and

WHEREAS, Seller desires to sell, transfer and assign to Purchaser, and Purchaser desires to purchase, acquire and assume from Seller pursuant to Sections 363 and 365 of the Bankruptcy Code all of the Purchased Assets and Assumed Liabilities, all as more specifically provided herein.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements hereinafter contained, the parties hereby agree as follows:

### ARTICLE I
### DEFINITIONS

1.1    Certain Definitions. For purposes of this Agreement, the following terms shall have the meanings specified in this Section 1.1:

"Affiliate" means, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, and the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by contract or otherwise.

"Agreement" shall have the meaning set forth in the Recitals of this Agreement.

"Asset Acquisition Statement" shall have the meaning set forth in Section 11.3 of this Agreement.

"Assigned Contracts" shall have the meaning set forth in Section 2.1(c) of this Agreement.

"Assigned Deposits" shall have the meaning set forth in Section 2.1(d) of this Agreement.

"Assumed Liabilities" shall have the meaning set forth in Section 2.3 of this Agreement.

"Bankruptcy Case" shall have the meaning set forth in the Recitals of this Agreement.

"Bankruptcy Code" shall have the meaning set forth in the Recitals of this Agreement.

"Bankruptcy Court" shall have the meaning set forth in the Recitals of this Agreement.

"Bidding Procedures Order" means an order of the Bankruptcy Court, substantially in the form of Exhibit A hereto, with such changes as are reasonably acceptable to Purchaser and Seller.

"Business Day" means any day of the year on which national banking institutions in _____ are open to the public for conducting business and are not required or authorized to close.

"Closing" shall have the meaning set forth in Section 4.1 of this Agreement.

"Closing Date" shall have the meaning set forth in Section 4.1 of this Agreement.

"Code" means the Internal Revenue Code of 1986, as amended.

"Competing Bid" shall have the meaning set forth in Section 7.1 of this Agreement.

"Confidential Information" shall have the meaning set forth in Section 8.6 of this Agreement.

"Contemplated Transactions" shall have the meaning set forth in Section 2.1 of this Agreement.

"Contract" means any written contract, agreement, indenture, note, bond, lease, license or other agreement, to which Seller is a party (or which otherwise relate to the Property) providing for the maintenance, repair, advertising or promotion of the Property, including service agreements, maintenance contracts, cleaning contracts, contracts for the purchase or delivery of labor, services, materials or supplies and equipment, brokerage agreements and landscaping and lawn maintenance agreements but excluding Leases and any Contract for property management services between Seller and its Affiliate.

"Documents" means all lease files, documents, instruments, papers, books, reports, records, tapes, photographs, letters, budgets, forecasts, ledgers, journals, title policies, rent rolls and tenant lists, plans and specifications, technical documentation (design specifications, operating manuals and maintenance manuals and logs, etc.), marketing documentation (sales

brochures, flyers, pamphlets, web pages, etc.), and other similar materials related to the Property or the Purchased Assets in each case whether or not in electronic form.

"Environmental Law" means any federal, state or local statute, law, regulation, code, ordinance, or rule of common law currently in effect relating to the protection of human health and safety or the environment or natural resources, including the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. § 9601 et seq.), the Hazardous Materials Transportation Act (49 U.S.C. App. § 1801 et seq.), the Resource Conservation and Recovery Act (42 U.S.C. § 6901 et seq.), the Clean Water Act (33 U.S.C. § 1251 et seq.), the Clean Air Act (42 U.S.C. § 7401 et seq.) the Toxic Substances Control Act (15 U.S.C. § 2601 et seq.), the Federal Insecticide, Fungicide, and Rodenticide Act (7 U.S.C. § 136 et seq.), and the Occupational Safety and Health Act (29 U.S.C. § 651 et seq.), and the regulations promulgated pursuant thereto.

"Escrow Agent" shall have the meaning set forth in Section 3.2 of this Agreement.

"Escrow Agreement" shall have the meaning set forth in Section 3.2 of this Agreement.

"Escrow Deposit" shall have the meaning set forth in Section 3.2 of this Agreement.

"Escrowed Funds" shall have the meaning set forth in Section 3.2 of this Agreement.

"Excluded Assets" shall have the meaning set forth in Section 2.2 of this Agreement.

"Excluded Liabilities" shall have the meaning set forth in Section 2.4 of this Agreement.

"Final Order" means an order or judgment, the operation or effect of which has not been stayed, reversed or amended and as to which order or judgment the time to appeal has expired and as to which no appeal was filed, or if filed, is no longer pending and has been fully and finally resolved.

"Governmental Authority" means any government or governmental or regulatory body thereof, or political subdivision thereof, whether foreign, federal, state, or local, or any agency, instrumentality or authority thereof, or any court or arbitrator (public or private).

"Hazardous Material" means any substance, material or waste which is regulated by any Governmental Authority including petroleum and its by-products, asbestos, biomedical waste, medical waste and any chemical, material or substance which is defined as a "hazardous waste," "hazardous substance," "hazardous material," "restricted hazardous waste," "industrial waste," "solid waste," "contaminant," "pollutant," "toxic waste" or "toxic substance" under any provision of Environmental Law.

"Improvements" means all buildings and other fixtures and improvements located on the Land.

"Intangibles" means any trade name used in connection with the ownership, operation and promotion of the Property, all logos used in connection with the advertising and promotion of the Property, and all local telephone numbers and listings for the Property.

DAL 77,446,490.2

"Knowledge" means the actual knowledge of those officers/managers of Purchaser or of those officers/managers of Seller, as applicable, each of which is identified on Schedule 1.1(a).

"Land" means that certain land located in [_____ County, _____], and more particularly described on Exhibit C attached hereto, together with (i) all right, title and interest of Seller, if any, in any land lying in the bed of any street, road, avenue or alley, open or closed, adjacent to or abutting such land, to the center line thereof; (ii) all easements, covenants and other rights, if any, appurtenant to, and all the estate and rights of Seller in and to, such land and the Improvements thereon; and (iii) all right, title and interest of Seller in and to the proceeds of, or any award made for, a taking of all or any part of such land or Improvements thereon by any Governmental Authority pursuant to the exercise of its power of eminent domain.

"Law" means any federal, state, local or foreign law, statute, code, ordinance, rule or regulation.

"Leases" means all written leases, licenses or other occupancy agreements, including all amendments, extensions, modifications and supplements thereto, pursuant to which any Person uses or occupies any part of the Property.

"Legal Proceeding" means any judicial, administrative or arbitral actions, suits, alternative dispute resolution, proceedings (public or private) or claims or any proceedings by or before a Governmental Authority or the Bankruptcy Case.

"Liability" means any debt, liability or obligation (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due), and including all fines, penalties, costs and expenses relating thereto.

"Licenses" means all written licenses, certificates of compliance, authorizations, approvals and permits issued by any Governmental Authority relating to Seller's (and not any Tenant's) use, operation, ownership or maintenance of the Property.

"Lien" means any lien, encumbrance, pledge, mortgage, deed of trust, security interest, claim, lease, charge, option, right of first refusal, easement, servitude, proxy, voting trust or agreement, adverse claim, and transfer restriction under any agreement, of any kind or nature, known or unknown.

"Material Adverse Effect" means (i) any effect or change that would be or is reasonably determined to be materially adverse to the Property (taken as a whole), including its results of operations or condition (financial or otherwise), or (ii) a material adverse effect on the ability of Seller to consummate the Contemplated Transactions or to perform its obligations under this Agreement, provided, however, that none of the following shall be deemed to constitute, and none of the following shall be taken into account in determining whether there has been, a Material Adverse Effect: (a) any adverse change, event, development, or effect arising from or relating to (1) general business or economic conditions, including such conditions related to the businesses of Seller, (2) national or international political or social conditions, including the engagement by the United States in hostilities, whether or not pursuant to the declaration of a national emergency or war, or the occurrence of any military or terrorist attack upon the United States, or any of its territories, possessions, or diplomatic or consular offices or upon any military

DAL 77,446,490.2

installation, equipment or personnel of the United States, (3) financial, banking, or securities markets (including any disruption thereof and any decline in the price of any security or any market index), (4) changes in United States generally accepted accounting principles, (5) the taking of any action contemplated by this Agreement and the other agreements contemplated hereby, (6) any effect resulting from the public announcement of this Agreement, compliance with terms of this Agreement or consummation of the transactions contemplated by this Agreement; or (7) any effect resulting from the filing or pendency of the Bankruptcy Case or proceedings relating thereto and reasonably anticipated effects thereof (b) any existing event, occurrence, or circumstance with respect to which Purchaser has knowledge as of the date hereof.

"Nonassignable Asset" shall have the meaning set forth in Section 2.6(b) of this Agreement.

"Order" means any order, injunction, judgment, decree, ruling, consent, approval, writ, assessment or arbitration award of a Governmental Authority.

"Ordinary Course of Business" means the ordinary and usual course of normal day-to-day operations of the Property through the date hereof consistent with past practice, subject, however, in respect of the period after the Petition Date, to those actions necessary and incident to the Bankruptcy Case.

"Permitted Encumbrances" means (i) all defects, exceptions, restrictions, easements, encroachments, covenants, reservations, declarations, state of facts, rights of way, encumbrances and Liens of any kind whatsoever encumbering or affecting the Property; (ii) all choate and inchoate liens or claims for Taxes, assessments or other governmental charges regarding the Property; (iii) all mechanics', carriers', workers', repairers', and similar Liens arising or incurred in connection with the ownership, construction or operation of the Property; and (iv) all zoning, entitlement and other land use and environmental regulations or designations by any Governmental Authority.

"Person" means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint-stock company, trust, unincorporated organization, association, estate, Governmental Authority or other entity.

"Petition Date" shall have the meaning set forth in the Recitals of this Agreement.

"Property" means the Land and all Improvements located thereon, together with all Tangible Personal Property and all right, title and interest of Seller in and to (i) the Contracts, transferable Licenses, assignable Intangibles and Warranties related to the Land and Improvements, and (ii) the Leases.

"Purchased Assets" shall have the meaning set forth in Section 2.1 of this Agreement.

"Purchased Personal Property" shall have the meaning set forth in Section 2.1(b) of this Agreement.

"Purchased Real Property" shall have the meaning set forth in Section 2.1(a) of this Agreement.

"Purchase Price" shall have the meaning set forth in Section 3.1 of this Agreement.

"Purchaser" shall have the meaning set forth in the Recitals of this Agreement.

"Purchaser Documents" shall have the meaning set forth in Section 6.2 of this Agreement.

"Release" means any release, spill, emission, leaking, pumping, injection, deposit, disposal, discharge, dispersal, or leaching of Hazardous Material into the indoor or outdoor environment, or into or out of any property.

"Remedial Action" means any and all actions as required by a Governmental Authority to (i) investigate, monitor, clean up, remove, remediate, treat or in any other way address any Hazardous Material; (ii) prevent any Release so it does not endanger or threaten to endanger public health or welfare or the indoor or outdoor environment or any natural resources; (iii) perform pre-remedial studies and investigations or post-remedial monitoring and care concerning Hazardous Material; or (iv) to correct a condition of noncompliance with, or in violation of, Environmental Law.

"Representatives" means with respect to any Person, any of its Affiliates, directors, trustees, officers, members, employees, consultants, agents, advisors, and other representatives.

"Revised Statements" shall have the meaning set forth in Section 11.3 of this Agreement.

"Sale Motion" means the motion or motions of Seller, in form and substance reasonably acceptable to Purchaser and Seller, seeking approval and entry of the Bidding Procedures Order and the Sale Order.

"Sale Order" means an order of the Bankruptcy Court substantially in the form of Exhibit B hereto, with such changes as are reasonably acceptable to Purchaser and Seller.

"Security Deposits" means all security deposits and other deposits (including interest, if any, accrued thereon in accordance with the terms of the Leases) relating to space within the Property paid by Tenants to Seller or its property manager and in the possession or control of Seller or its property manager.

"Seller" shall have the meaning set forth in the Section of the Recitals hereof.

"Tangible Personal Property" means all furniture, furnishings, fixtures, equipment, machinery, appliances, tools, and other tangible personal property of every kind and description owned by Seller and located on, attached to or used or useful in connection with the management, leasing, operation, maintenance and repair of the Land and/or the Improvements, including any right, title or interest of Seller in any space plans relating to Leases of space in the Improvements, prepared by Seller or on its behalf and in the possession of Seller, Seller's inventory of spare and replacement parts, Seller's inventory of consumable supplies.

"Taxes" means (i) all federal, state, local or foreign taxes, charges or other assessments, including all net income, gross receipts, capital, sales, use, ad valorem, value added, transfer, franchise, profits, inventory, capital stock, license, withholding, payroll, employment, social security, unemployment, excise, severance, stamp, occupation, property, excise taxes under Section 4358 of the Code, unrelated business income taxes, and estimated taxes, whether disputed or not, and (ii) all interest, penalties, tines, additions to tax or additional amounts imposed by any taxing authority in connection with any item described in clause (i).

"Tenants" means all Persons leasing or occupying space within the Improvements pursuant to written leases and agreements with Seller or a prior owner of the Property or with any other Tenant.

"Transfer Taxes" shall have the meaning set forth in Section 11.1 of this Agreement.

"Warranties" means all assignable warranties or guaranties presently in effect from contractors, suppliers or manufacturers of personal property installed in or used in connection with the Property or any work performed or improvements included as a part of the Property.

1.2     List of Schedules and Exhibits.

| | |
|---|---|
| Schedule 1.1(a) | "Knowledge" Officers/Managers of Purchaser and Seller |
| Schedule 2.1(a) | Leases |
| Schedule 2.1(c) | Assigned Contracts; |
| Schedule 5.3(c) | Nonassignable (without consent) Purchased Assets |
| Schedule 5.4 | Purchased Assets (w/Liens) |
| Schedule 5.5 | Legal Proceedings |
| Schedule 5.6 | Environmental Matters |
| | |
| Exhibit A | Bidding Procedures Order |
| Exhibit B | Sale Order |
| Exhibit C | Legal Description of Land |

1.3     Other Definitional and Interpretive Matters.

(a)     Unless otherwise expressly provided, for purposes of this Agreement, the following rules of interpretation shall apply:

(i)     Calculation of Time Periods.  When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded.  If the last day of such period is a non-Business Day, the period in question shall end on the next succeeding Business Day.

(ii)     Dollars.  Any reference in this Agreement to $ shall mean U.S. dollars.

(iii)     Exhibits/Schedules.  All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set

-7-

forth in full herein. Any matter or item disclosed on one Schedule shall be deemed to have been disclosed on each other Schedule to the extent it is reasonably apparent that it is pertinent to the subject matter of such other Schedule. Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein shall be defined as set forth in this Agreement.

(iv)     Gender and Number. Any reference in this Agreement to gender shall include all genders, and words imparting the singular number only shall include the plural and vice versa.

(iv)     Headings. The provision of a Table of Contents, the division of this Agreement into Articles, Sections and other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in construing or interpreting this Agreement. All references in this Agreement to any "Section" are to the corresponding Section of this Agreement unless otherwise specified.

(v)     Herein. The words such as "herein," "hereinafter," "hereof," and "hereunder" refer to this Agreement as a whole and not merely to a subdivision in which such words appear unless the context otherwise requires.

(vi)     Including. The word "including" or any variation thereof means "including, without limitation" and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.

(vii)     Made available to Purchaser. The phrase "made available to Purchaser" shall mean made available to Purchaser through posting in Seller's electronic data room, via email, facsimile or other electronic transfer or through other written means for all purposes of this Agreement.

(viii)     Survival of Certain Covenants. Any covenant which by its terms is to be performed after the Closing shall survive the Closing, notwithstanding the fact that the provision does not explicitly provide that the covenant shall survive the Closing.

(b)     The parties hereto have been advised by experienced counsel, and have participated jointly, in the negotiation and drafting of this Agreement and, in the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted in its entirety by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provision of this Agreement.

## ARTICLE II
## PURCHASE AND SALE OF ASSETS; ASSUMPTION OF LIABILITIES

2.1     Purchase and Sale of Assets. On the terms and subject to the conditions set forth in this Agreement, at the Closing and subject to Bankruptcy Court approval as provided under Section 363(f) of the Bankruptcy Code, Purchaser shall purchase, acquire and accept from Seller, and Seller shall sell, transfer, assign, convey and deliver to Purchaser (the "Contemplated Transactions") all of Seller's right, title and interest in, to and under the Purchased Assets, subject

to all Permitted Encumbrances. The term "Purchased Assets" means all of Seller's rights, titles and interests in and to the following:

(a)     all right, title and interest of Seller in and to the Land and Improvements, and all improvements and fixtures thereto and other appurtenances and rights in respect thereof and all Leases identified on Schedule 2.1(a) (collectively, the "Purchased Real Property");

(b)     (i) all Tangible Personal Property, (ii) to the extent transferable, all Licenses used by Seller in the Property and assignable Intangibles, and (iii) to the extent transferable, all rights of Seller under or pursuant to all Warranties, other than any Warranties pertaining to any Excluded Assets (collectively, the "Purchased Personal Property");

(c)     all Contracts identified on Schedule 2.1(c) and all rights arising out of the foregoing, along with any additional Contracts primarily pertaining to or used in connection with the Property that are entered into after the date hereof but prior to the Closing (collectively, the "Assigned Contracts");

(d)     all Security Deposits and deposits for electricity, telephone or other utilities and deposits posted under any Assigned Contract remaining as of the Closing Date, other than any deposits paid in connection with or relating to any Excluded Assets or which have been or will be netted by the holder thereof against any unpaid pre-petition or post-petition liability of Seller (the "Assigned Deposits");

(e)     to the extent transferable, all telephone numbers and facsimile numbers, and domain names and email addresses; and

(f)     any and all other assets owned by Seller that are material to the operation of the Property in the Ordinary Course of Business, other than Excluded Assets.

2.2     Excluded Assets. Nothing herein contained shall be deemed to sell, transfer, assign or convey the Excluded Assets to Purchaser, and Seller shall retain all right, title and interest to, in and under the Excluded Assets. The term "Excluded Assets" shall mean the following assets, properties, interests and rights of Seller:

(a)     all cash, cash equivalents, bank deposits or similar cash items of Seller, except the Assigned Deposits;

(b)     any other Contract to which Seller is a party or under which it has rights that is not used primarily in the Property or, though used primarily in the Property, is used to a material degree in any of business operations of Seller, unless included in Schedule 2.1(c) among the Assigned Contracts;

(c)     any (i) personnel files for employees of Seller; (ii) other books and records that Seller are required by Law to retain; provided, however, that Purchaser shall have the right to make copies of any portions of such retained books and records that relate to the Property as conducted before the Closing (except as prohibited by Law) or that relate to any of the Purchased Assets; (iii) Documents which Seller is not permitted to transfer pursuant to any contractual confidentiality obligation owed to any third party; (iv) documents relating to proposals to acquire

-9-

the Property by Persons other than Purchaser; (v) any Documents primarily related to or that are required to realize the benefits of any Excluded Assets; and (vi) documents necessary to prepare tax returns and cost reports;

(d)     any claim, right or interest, of Seller in or to any refund, rebate, abatement or other recovery for Taxes for any calendar year preceding the Closing Date, together with any interest due thereon or penalty rebate arising therefrom;

(e)     all insurance policies or rights to proceeds with respect to Excluded Assets and in respect of tort liabilities and other Excluded Liabilities;

(f)     all of Seller's deposits or prepaid charges and expenses paid in connection with or relating to any Excluded Assets;

(g)     any rights, claims or causes of action of Seller against third parties relating to assets, properties, business or operations of Seller, including any actions under sections 544, 545, 547, 548, 549, 550, 551 and 724(a) of the Bankruptcy Code;

(h)     any right to receive or expectancy of Seller in any charitable gift, grant, bequest or legacy (including any income or remainder interest in or under any trust or estate); and

(i)     all other rights of Seller under this Agreement, Seller Documents and the Contemplated Transactions.

2.3     Assumption of Liabilities.  On the terms and subject to the conditions set forth in this Agreement, at the Closing, Purchaser shall assume and shall timely pay, perform and discharge in accordance with their respective terms, all Liabilities of Seller, except the Excluded Liabilities, including the following (collectively, the "Assumed Liabilities"):

(a)     all existing and future Liabilities, including continuing performance obligations, with respect to the Purchased Assets and the Permitted Encumbrances;

(b)     all Liabilities due from Seller pursuant to a Final Order entered in the Bankruptcy Case governing debtor-in-possession financing;

(c)     the Transfer Taxes applicable to the transfer of the Purchased Assets pursuant to this Agreement, if any; and

(d)     any Remedial Action concerning any of the Purchased Assets.

2.4     Excluded Liabilities.  Purchaser shall not assume or become liable for the payment or performance of any of the following Liabilities of Seller, whether accrued or unaccrued, known or unknown, fixed or contingent ("Excluded Liabilities"), all of which shall remain Liabilities of Seller:

(a)     any Liability based upon any wrongful or negligent act or omission of Seller prior to the Closing;

-10-

(b)     any Taxes in the nature of income tax imposed upon Seller in connection with the sale of the Purchased Assets contemplated hereby;

(c)     any Liability associated with any Excluded Assets;

(d)     any Liability relating to any breach of contract, breach of warranty, tort, infringement, or violation of Law by Seller;

(e)     any Liability arising out of or in connection with any Legal Proceedings (whether instituted prior to or after Closing) to the extent arising from acts or omissions which occurred prior to the Closing Date;

(f)     all liabilities and obligations of Seller to Purchaser under this Agreement or with respect to or arising out of the transactions contemplated hereby.

2.5     <u>Cure Amounts</u>.   Except as otherwise permitted by the next sentence of this paragraph, the Closing and pursuant to Section 365 of the Bankruptcy Code, Seller shall assign to Purchaser, and Purchaser shall assume from Seller, the Purchased Assets.  All amounts, if any, necessary to cure all defaults, if any, and to pay all actual or pecuniary losses, if any, that have resulted from any defaults on the part of Seller in respect of any Liens, Taxes or other Assumed Liabilities pertaining to the Purchased Assets shall be paid by Purchaser at or before the Closing (except as otherwise agreed to by the other party to the Purchased Assets) and Seller shall have no liability for the payment of such amounts.

2.6     <u>Further Conveyances and Assumptions</u>.

(a)     From time to time following the Closing, each party shall, and shall cause their respective Affiliates to, execute, acknowledge and deliver all such further conveyances, notices, assumptions, releases and acquaintances and such other instruments, and shall take such further actions, as may be reasonably necessary or appropriate to assure fully to Purchaser and its respective successors or assigns, all of the properties, rights, titles, interests, estates, remedies, powers and privileges intended to be conveyed to Purchaser under this Agreement and Seller Documents and to assure fully to Seller and its Affiliates and their successors and assigns, the assumption of the liabilities and obligations intended to be assumed by Purchaser under this Agreement and Seller Documents, and to otherwise make effective the transactions contemplated hereby and thereby.  In the event that Purchaser or its Affiliates receives any Excluded Assets (or any payments or proceeds related thereto) following the Closing, Purchaser shall promptly deliver such Excluded Assets (or any payments or proceeds related thereto) to Seller.  In the event that Seller or its Affiliates receives any Purchased Assets (or any payments or proceeds related thereto) following the Closing, Seller shall promptly deliver such Purchased Assets (or any payments or proceeds related thereto) to Purchaser.

(b)     To the extent that the assignment of any Purchased Asset shall require the consent of any other party and such consent shall still be required notwithstanding the Sale Order and Sections 363 and 365 of the Bankruptcy Code (each, a "<u>Nonassignable Asset</u>") nothing in this Agreement nor the consummation of the transactions contemplated hereby shall be construed as an attempt or agreement to assign such Nonassignable Asset unless and until such consent shall have been obtained.  With respect to Purchased Personal Property that is material for the

-11-

Property as a going concern after the Closing Date, the Seller shall, and shall cause its Affiliates to, use their commercially reasonable efforts to cooperate with Purchaser at its request for up to ninety (90) days following the Closing Date in endeavoring to obtain such consents promptly, provided, however, that such efforts shall not require the Seller or any of its Affiliates to incur any expenses or Liabilities or provide any financial accommodation or to remain secondarily liable or contingently liable for any Assumed Liabilities in order to obtain any such consent.

2.7    Bulk Sales Laws.  The parties hereto hereby waive compliance by Seller with the requirements and provisions of any "bulk-transfer" Laws of any jurisdiction that may otherwise be applicable with respect to the sale and transfer of any or all of the Purchased Assets to Purchaser.

## ARTICLE III
## CONSIDERATION

3.1    Purchase Price.  The consideration for the Purchased Assets shall be comprised of the following: (a) the assumption by Purchaser of the Assumed Liabilities set forth in Section 2.3; (b) _____ Dollars ($_____); and (c) Transfer Taxes, if any, and other payment obligations of Purchaser hereunder (the "Purchase Price").

3.2    Escrow Deposit.  As promptly as possible, but in any event within three (3) Business Days after the execution of this Agreement, Purchaser shall deposit with _____, in its capacity as escrow agent (the "Escrow Agent"), pursuant to that certain Escrow Agreement, dated as of the date hereof, by and among Purchaser, Seller and the Escrow Agent (the "Escrow Agreement") by wire transfer of immediately available funds, an amount equal to _____ Dollars ($_____) (the "Escrowed Funds"), such deposit to be released by the Escrow Agent and delivered to either Purchaser or Seller, in accordance with the provisions of the Escrow Agreement.  Pursuant to the Escrow Agreement, the Escrowed Funds shall be deposited into an interest bearing account (which together with all accrued investment income thereon is collectively, the "Escrow Deposit") distributed as follows:

(a)    If the Closing shall occur, the Escrowed Funds shall be delivered to Seller as partial consideration for the Purchased Assets, and all accrued investment income on the Escrowed Funds shall be delivered to Purchaser at the Closing;

(b)    If this Agreement is terminated by Seller pursuant to Section 4.4(b)(ii), the Escrowed Funds together with all accrued investment income thereon, shall be delivered to Seller; or

(c)    If this Agreement is terminated pursuant to Section 4.4 other than by Seller pursuant to Section 4.4(b)(ii), the Escrowed Funds, together with all accrued investment income thereon, shall in each case be returned to Purchaser.

3.3    Payment of Consideration.  On the Closing Date, Purchaser shall pay to Seller by wire transfer of immediately available funds into an account designated by Seller, an amount equal to the Purchase Price as set forth in Section 3.1, less the amount of the Escrowed Funds (which shall be delivered to Seller by the Escrow Agent).  In addition, Purchaser shall assume

-12-

the obligation to pay in the ordinary course of business after the Closing Date, the Assumed Liabilities and any other amounts set forth in Section 3.1.

## ARTICLE IV
## CLOSING AND TERMINATION

4.1     Closing Date.  Subject to the satisfaction of the conditions set forth in Sections 10.1, 10.2 and 10.3 (or the waiver thereof by the party entitled to waive that condition), the closing of the purchase and sale of the Purchased Assets and the assumption of the Assumed Liabilities provided for in Article II hereof (the "Closing") shall take place at [_____] (or at such other place as Seller and Purchaser may designate in writing) at 10:00 a.m. (_____ time) on a date that is no less than two (2) Business Days following the satisfaction or waiver of the conditions set forth in Article X (other than conditions that by their nature are to be satisfied at the Closing, but subject to the satisfaction or waiver of such conditions), but in no event later than [_____, 2009], unless another time or date, or both, are agreed to in writing by Seller and Purchaser.  The date on which the Closing shall be held is referred to in this Agreement as the "Closing Date".  Unless otherwise agreed by Seller and Purchaser in writing, regardless of the time at which the Closing is completed, the Closing shall be deemed effective and all right, title and interest of Seller in the Purchased Assets to be acquired by Purchaser hereunder, and any Assumed Liability and all risk of loss with respect to the Purchased Assets, shall be considered to have passed to Purchaser as of 12:01 a.m. (_____ time) on the Closing Date.

4.2     Deliveries by Seller.  At the Closing, Seller shall deliver to Purchaser:

(a)     a certificate of good standing of Seller from the State of_____;

(b)     a true and complete copy of the [certificate of incorporation of Seller and all amendments thereto, certified by the State of _____][bylaws][certificate of limited partnership, certified by the State of _____][partnership agreement];

(c)     true and complete copies of resolutions and/or consents of the board of directors/managers/members of Seller, certified by Seller, authorizing the execution, delivery and performance of this Agreement and all instruments and documents to be delivered in connection herewith, and the transactions contemplated hereby by Seller;

(d)     a duly executed conveyance deed in a form reasonably acceptable to Purchaser and Seller, together with duly executed affidavits of title in form reasonably acceptable to Seller;

(e)     a duly executed bill of sale and assignment and assumption agreement, as to all Purchased Personal Property, in a form reasonable acceptable to Purchaser and Seller;

(f)     the certificates required to be delivered pursuant to Sections 10.1(a) and 10.1(b);

(g)     a duly executed Non-Foreign Person Affidavit for Seller in compliance with Section 1445 of the Code;

-13-

(h)     original counterparts of each Assigned Contract and Lease that is in Seller's possession, custody or control;

(i)     all other instruments of conveyance and transfer executed by Seller, in form and substance reasonably acceptable to Purchaser and Seller, as may be necessary to convey the Purchased Assets to Purchaser, subject to the Permitted Encumbrances; and

(j)     a certified copy of the Sale Order having been entered by the Bankruptcy Court and docketed, in form and substance acceptable to Purchaser.

4.3     Deliveries by Purchaser.  At the Closing, Purchaser shall deliver to Seller:

(a)     the Purchase Price as set forth in Section 3.1 hereof;

(b)     a duly executed bill of sale and assignment and assumption agreement in a form reasonable acceptable to Purchaser and Seller;

(c)     the certificates required to be delivered pursuant to Sections 10.2(a) and 10.2(b);

(d)     a certificate of good standing of Purchaser from the State of _____;

(e)     a true and complete copy of the [certificate of incorporation of Purchaser and all amendments thereto, certified by the State of _____][bylaws][certificate of limited partnership, certified by the State of _____][partnership agreement];

(f)     true and complete copies of resolutions and/or consents of the board of directors/managers/members of Purchaser, certified by Purchaser, authorizing the execution, delivery and performance of this Agreement and all instruments and documents to be delivered in connection herewith, and the transactions contemplated hereby by Purchaser;

(g)     a copy of any notification that Purchaser is required under the Escrow Agreement to deliver to the Escrow Agent in order for the Escrow Agent to release the Escrow Deposit to Seller at the Closing; and

(h)     such other documents, instruments and certificates as Seller may reasonably request.

4.4     Termination of Agreement.  In respect of the Contemplated Transactions, this Agreement may be terminated prior to the Closing as follows:

(a)     Termination by Purchaser.  Purchaser may terminate this Agreement upon the occurrence of any of the following:

(i)     if any of the conditions to the obligations of Purchaser to close that are set forth in Sections 10.1 and 10.3 shall have become incapable of fulfillment other than as a result of a breach by Purchaser of any covenant or agreement contained in this Agreement, and such condition is not waived by Purchaser; or

-14-

(ii)     if there shall be a material breach by Seller of any material representation or warranty, or any covenant or agreement contained in this Agreement which breach cannot be cured or has not been cured within twenty (20) Business Days after the giving of written notice by Purchaser to Seller of such breach; or

(iii)     so long as Purchaser is not then breach of its obligations under this Agreement in any material respect, if (A) the Bidding Procedures Order is not entered within sixty (60) days from the date hereof or (B) the Sale Order is not entered within ninety (90) days from the date hereof.

(b)     <u>Termination by Seller</u>.  Seller may terminate this Agreement upon the occurrence of any of the following:

(i)     if any of the conditions to the obligations of Seller to close that are set forth in <u>Sections 10.2</u> and <u>10.3</u> shall have become incapable of fulfillment other than as a result of a breach by Seller of any covenant or agreement contained in this Agreement, and such condition is not waived by Seller; or

(ii)     if there shall be a material breach by Purchaser of any material representation or warranty, or by Purchaser of any material covenant or agreement contained in this Agreement, which breach cannot be cured or has not been cured within twenty (20) Business Days after the giving of written notice by Seller to Purchaser of such breach.

(c)     <u>Termination by Purchaser or Seller</u>.  Either Purchaser or Seller may terminate this Agreement upon the occurrence of any of the following:

(i)     by mutual written consent of Seller and Purchaser;

(ii)     if the Bankruptcy Court shall enter an order approving a Competing Bid, and a transaction associated with such bid that actually closes, subject to the limitations set forth in the Bidding Procedures Order;

(iii)     upon written notice to the other party if the Closing shall not have occurred by the close of business on _____ ; provided, however, that if (A) the Closing shall not have occurred by the close of such date due to an action or failure to act by a Governmental Authority that prevents the consummation of the Contemplated Transactions and (B) the non-terminating party is otherwise capable of satisfying the conditions to its obligations to consummate the Contemplated Transactions set forth in <u>Article X</u> a termination under this <u>Section 4.4(c)(iii)</u> shall not be effective for forty-five (45) days after the provision of written notice; provided, further, that such termination shall not be effective if all conditions to the obligations of the non-terminating party to consummate the Contemplated Transactions set forth in <u>Article X</u> shall have been satisfied or otherwise waived and the Closing shall have occurred within such 45-day period.

(d)     <u>Extension of Time Periods</u>.  The time periods for termination of this Agreement set forth in this <u>Section 4.4</u> may be extended upon the written agreement of the parties without the further consent of the Bankruptcy Court.

DAL 77,446,490.2

4.5    Procedure For Termination.  In the event of termination of this Agreement by Purchaser or Seller, or both, pursuant to Section 4.4, written notice thereof shall forthwith be given to the other parties, and upon the giving of such notice (or at such time as specified in the particular termination right set forth in Section 4.4) the Contemplated Transactions shall be abandoned and this Agreement shall terminate to the extent and with the effect provided by Section 4.6 without further action by the parties.

4.6    Effect of Termination.

(a)    In the event that this Agreement is validly terminated as provided herein, then each of the parties shall be relieved of its duties and obligations arising under this Agreement after the date of such termination and such termination shall be without liability to any party; provided, however, that the obligations of the parties set forth in the Escrow Agreement and Sections 3.2, 4.6 and 8.6 of this Agreement, and to the extent necessary to effectuate the foregoing enumerated provisions, Article I of this Agreement shall survive any such termination and shall be enforceable in accordance with their terms.  In addition, if this Agreement is terminated as provided herein, each party shall upon request redeliver or destroy as soon as practicable any or all documents, work papers and other material of any other party relating to its business or affairs or the transactions contemplated hereby, whether obtained before or after the execution hereof, to the party furnishing the same, other than any material which is of public record.

(b)    Nothing in this Section 4.6 shall relieve the parties of any liability for a breach of this Agreement prior to the date of termination.  Notwithstanding the foregoing, no attorneys' fees reasonably incurred by a party in connection with the transactions contemplated hereby shall be payable to or out-of-pocket expense reimbursement or other fees shall be made to any party upon termination of this Agreement pursuant to Section 4.4.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants to Purchaser that:

5.1    Organization and Good Standing.  Seller is a _____ duly organized, validly existing and in good standing under the laws of the State of _____ and has all requisite power and authority to own, lease and operate its properties and to carry on its business as now conducted.

5.2    Authorization of Agreement.  Except for such authorization as is required by the Bankruptcy Court (as hereinafter provided for) Seller has all requisite power, authority and legal capacity to execute and deliver, and has taken all corporate action, including approval of its directors, members and/or trustees (as applicable), necessary for it to validly execute and deliver, this Agreement and each other agreement, document, or instrument or certificate contemplated by this Agreement to be executed and delivered by Seller in connection with Seller entering into this Agreement.

5.3    Consents of Third Parties: Contractual Consents.  To Seller's Knowledge, as of the date hereof, except as set forth on Schedule 5.3 all of the Purchased Assets, subject to

-16-

assignment, can be assigned to Purchaser pursuant to Section 365(c)(1) of the Bankruptcy Code without the consent of the counterparty or relevant Governmental Authority, as applicable.

5.4    Title to Purchased Assets. Except as set forth in Schedule 5.4 and the personal property subject to any Leases, Seller owns each of the Purchased Assets, subject to the Permitted Encumbrances.

5.5    Litigation. Except for Legal Proceedings that have been stayed and as set forth on Schedule 5.5 there are no Legal Proceedings pending or, to the Knowledge of Seller, threatened against Seller or involving the Property or the Purchased Assets before any Governmental Authority.

5.6    Environmental Matters. The representations and warranties contained in this Section 5.6 are the sole and exclusive representations and warranties of Seller pertaining or relating to any environmental, health or safety matters, including any arising under any Environmental Laws. Except as set forth on Schedule 5.6 hereto:

(a)    To the Knowledge of Seller, the operation of the Property and the Purchased Assets are in compliance in all material respects with all applicable Environmental Laws;

(b)    To the Knowledge of Seller, Seller is not the subject of any outstanding Order, notice, directive, or other writing from or Contract with any Governmental Authority respecting (i) Environmental Laws, (ii) Remedial Action or (iii) any Release or threatened Release, in each case, relating to the operation of the Property or to any Purchased Asset; and

(c)    To the Knowledge of Seller, Seller has not received any written communication or other notice alleging that Seller may be in violation of any Environmental Law or may have any liability under any Environmental Law, in each case related to the Property or to any Purchased Asset.

5.7    No Other Representations or Warranties Schedules. Except for the representations and warranties contained in this Article V (as modified by the Schedules hereto), neither Seller nor any other Person makes any other express or implied representation or warranty with respect to the Seller, the Property, the Purchased Assets the Assumed Liabilities or the transactions contemplated by this Agreement, and the Seller disclaims any other representations or warranties, whether made by the Seller, its Affiliates or any of their respective officers, directors, employees, agents or other Representatives. Except for the representations and warranties contained in Article V hereof (as modified by the Schedules hereto), Seller (i) expressly disclaims and negates any representation or warranty, expressed or implied, at common law, by statute, or otherwise, relating to the condition of the Purchased Assets (including any implied or expressed warranty of merchantability or fitness for a particular purpose, or of conformity to models or samples of materials) and (ii) disclaims all liability and responsibility for any representation, warranty, projection forecast, statement, or information made, communicated, or furnished (orally or in writing) to Purchaser or its Representatives (including any opinion, information, projection, or advice that may have been or may be provided to Purchaser or its Representatives by any director, officer, employee, agent,

consultant, or other Representative of the Seller or any of their Affiliates). The Seller makes no representations or warranties to Purchaser regarding the probable success or profitability of the Property. The disclosure of any matter or item in any schedule hereto shall not be deemed to constitute an acknowledgment that any such matter is required to be disclosed or is material or that such matter would result in a Material Adverse Effect.

## ARTICLE VI
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Seller that:

6.1     <u>Organization and Good Standing</u>. Purchaser is a _____ duly organized, validly existing and in good standing under the laws of the State of _____ and has all requisite power and authority to own, lease and operate its properties and to carry on its business as now conducted.

6.2     <u>Authorization of Agreement</u>. Purchaser has full power and authority to execute and deliver this Agreement and each other agreement, document, instrument or certificate contemplated by this Agreement or to be executed by it in connection with the consummation of the transactions contemplated hereby and thereby (the "<u>Purchaser Documents</u>") and to consummate the transactions contemplated hereby and thereby. The execution, delivery and performance by Purchaser of this Agreement and Purchaser Documents have been duly authorized by all necessary corporate action on behalf of Purchaser. This Agreement has been, and Purchaser Documents will be at or prior to the Closing, duly executed and delivered by Purchaser and (assuming the due authorization, execution and delivery by the other parties hereto and thereto) this Agreement constitutes, and Purchaser Documents when so executed and delivered will constitute, the legal, valid and binding obligations of Purchaser, enforceable against Purchaser in accordance with their respective terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

6.3     <u>Conflicts; Consents of Third Parties</u>.

(a)     Purchaser is not required to obtain any consent, approval, authorization, waiver, Order, license or Permit of or from, or to make any declaration or filing with, or to give any notification to, any Person (including any Governmental Authority) in connection with the execution and delivery of this Agreement or the Purchaser Documents by Purchaser, the compliance by Purchaser with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby or thereby or the taking by Purchaser of any other action contemplated hereby or thereby, except for such consents, waivers, approvals, Orders, Licenses, authorizations, declarations, filings and notifications (A) that have already been obtained or made or (B) of which the failure to have obtained or made would not have a Material Adverse Effect or would not reasonably be expected to prevent or materially delay the ability of Purchaser to perform or consummate the Contemplated Transactions.

-18-

(b)     None of the execution and delivery by Purchaser of this Agreement or any of the Purchaser Documents, the consummation of the Contemplated Transactions by Purchaser, or compliance by Purchaser with any of the provisions hereof or thereof will conflict with, or result in any violation of or a default (with or without notice or lapse of time, or both) under, or give rise to a right of termination or cancellation under any provision of, any Contract or Permit to which Purchaser is a party or by which any of the properties or assets of Purchaser are bound, other than any such conflicts, violations, defaults, terminations or cancellations that would not have a material adverse effect on the ability of Purchaser to consummate the transactions contemplated by this Agreement.

6.4     Litigation.     There are no Legal Proceedings pending or, threatened against Purchaser, or to which Purchaser is otherwise a party before any Governmental Authority, which, if adversely determined, would reasonably be expected to have a material adverse effect on the ability of Purchaser to perform its obligations under this Agreement or the ability of Purchaser to consummate the transactions contemplated hereby. Purchaser is not subject to any Order of any Governmental Authority except to the extent the same would not reasonably be expected to have a material adverse effect on the ability of Purchaser to perform its obligations under this Agreement or the ability of Purchaser to consummate the transactions contemplated hereby.

6.5     Acknowledgement Regarding Condition of the Property.

(a)     Notwithstanding anything contained in this Agreement to the contrary, Purchaser acknowledges and agrees that Seller is not making any representations or warranties whatsoever, express or implied, beyond those expressly given by Seller to Purchaser in Article V hereof (as modified by the Schedules hereto as supplemented or amended), and Purchaser acknowledges and agrees that, except for the representations and warranties (and Schedules) contained therein, the Purchased Assets and the Property are being transferred to Purchaser on a "WHERE IS" and, as to condition, "AS IS" basis. Any claims Purchaser may have for breach of representation or warranty shall be based solely on the representations and warranties of Seller set forth in Article V hereof (as modified by the Schedules hereto, as supplemented or amended). Purchaser further represents that neither Seller nor any of its Affiliates nor any other Person has made any representation or warranty, express or implied, as to the accuracy or completeness of any information regarding Seller, the Property or the transactions contemplated by this Agreement not expressly set forth in this Agreement, and neither Seller, any of its Affiliates or any other Person will have or be subject to any liability to Purchaser or any other Person resulting from the distribution to Purchaser or its Representatives or the use by Purchaser or any of its Affiliates of, any such information, including, without limitation, any confidential memoranda distributed on behalf of Seller relating to the Property or other publications or data room information provided to Purchaser or its Representatives, or any other document or information in any form provided to Purchaser or its Representatives in connection with the sale of the Property and the transactions contemplated hereby. Purchaser acknowledges that it, along with its Representatives, has conducted or, as of the Closing Date, will have conducted, to its satisfaction, its own independent investigation of the Property and, in making the determination to proceed with the transactions contemplated by this Agreement, Purchaser has, or will have, relied on the results of its own independent investigation. **WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, PURCHASER ACKNOWLEDGES THAT**

SELLER HAS NOT MADE ANY REPRESENTATION RELATING TO THE PROPERTY REGARDING SOIL CONDITIONS, AVAILABILITY OF UTILITIES, DRAINAGE, COMPLIANCE WITH ZONING LAWS, ENVIRONMENTAL LAWS, OR ANY OTHER FEDERAL, STATE OR LOCAL STATUTES, CODES, REGULATIONS OR ORDINANCES RELATING TO THE USE THEREOF, EXCEPT AS EXPRESSLY STATED HEREIN. PURCHASER ALSO ACKNOWLEDGES AND AGREES THAT THE INSPECTION AND INVESTIGATION OF THE PURCHASED ASSETS BY PURCHASER AND ITS REPRESENTATIVES HAS BEEN ADEQUATE TO ENABLE PURCHASER TO MAKE ITS OWN DETERMINATION WITH RESPECT TO THE SUITABILITY OR FITNESS OF THE PROPERTY, INCLUDING WITH RESPECT TO SOIL CONDITIONS, AVAILABILITY OF UTILITIES, DRAINAGE, ZONING LAWS, ENVIRONMENTAL LAWS, AND ANY OTHER FEDERAL, STATE OR LOCAL STATUTES, CODES REGULATIONS OR ORDINANCES. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT, THE PURCHASED ASSETS ARE BEING SOLD BY SELLER, AND PURCHASER AGREES TO ACCEPT THE PURCHASED ASSETS, IN "AS-IS" AND "WHERE-IS" CONDITION ON THE CLOSING DATE. PURCHASER ACKNOWLEDGES, REPRESENTS AND WARRANTS THAT (I) PURCHASER HAS HAD AN OPPORTUNITY TO MAKE AN INDEPENDENT INVESTIGATION AND EXAMINATION OF THE PURCHASED ASSETS (AND ALL MATTERS RELATED THERETO), AND TO BECOME FULLY FAMILIAR WITH THE PHYSICAL AND ENVIRONMENTAL CONDITION OF THE PROPERTY, AND (II) SELLER AND ITS EMPLOYEES, RESIDENTS, INTERNS, FELLOWS, AGENTS, MEMBERS, DIRECTORS, AND OFFICERS HAVE NOT MADE AND SHALL NOT MAKE ANY VERBAL OR WRITTEN REPRESENTATIONS, WARRANTIES OR STATEMENTS OF ANY NATURE OR KIND WHATSOEVER TO PURCHASER, WHETHER EXPRESS OR IMPLIED, WITH RESPECT TO THE ABOVE, AND, IN PARTICULAR, EXCEPT AS EXPRESSLY SET FORTH HEREIN, NO REPRESENTATIONS OR WARRANTIES HAVE BEEN MADE OR SHALL BE MADE WITH RESPECT TO (A) THE PHYSICAL CONDITION OR OPERATION OF THE PROPERTY, INCLUDING THE EXISTENCE OF ANY ENVIRONMENTAL HAZARDS OR CONDITIONS THEREON (INCLUDING THE PRESENCE OF ASBESTOS OR ASBESTOS CONTAINING MATERIALS OR THE RELEASE OR THREATENED RELEASE OF HAZARDOUS SUBSTANCES), (B) THE REVENUES OR EXPENSES OF THE PROPERTY, (C) THE ZONING AND OTHER LEGAL REQUIREMENTS APPLICABLE TO THE PROPERTY OR THE COMPLIANCE OF THE PROPERTY THEREWITH, (D) THE NATURE AND EXTENT OF ANY MATTER AFFECTING TITLE TO THE REAL ESTATE OR TO ANY PERSONALTY, (E) THE QUANTITY, QUALITY, OR CONDITION OF THE PERSONALTY, OR (F) ANY OTHER MATTER OR THING AFFECTING OR RELATING TO THE PROPERTY, OR ANY PORTION THEREOF, THE INTERESTS THEREIN TO BE CONVEYED TO PURCHASER PURSUANT TO THE TERMS OF THE TRANSACTIONS CONTEMPLATED HEREBY. THE FOREGOING SHALL NOT, IN ANY WAY, AFFECT PURCHASER'S RIGHTS UNDER <u>ARTICLE XII</u> HEREOF. PURCHASER ACKNOWLEDGES THAT THE DISCLAIMERS, AGREEMENTS AND OTHER STATEMENTS SET FORTH IN THIS PARAGRAPH ARE AN INTEGRAL PORTION OF THIS AGREEMENT.

(b)     Except as set forth in this Agreement, Seller hereby specifically disclaims any warranty, guaranty, oral or written, express or implied or arising by operation of law or otherwise, with respect to the matters referred to in Section 6.7(a) above and any warranty of condition, habitability, merchantability or fitness for a particular purpose, in respect to the Purchased Assets.  Purchaser declares and acknowledges that this express disclaimer shall be considered a material and integral part of this sale and is reflected in the consideration payable by Purchaser hereunder and, as an inducement for Seller to proceed with this transaction, Purchaser further declares and acknowledges that this disclaimer has been brought to the attention of Purchaser and explained in detail and that Purchaser has voluntarily and knowingly consented thereto.  Seller acknowledges that the foregoing shall not affect Purchaser's rights under Article XII hereof.

6.6     Financial Ability To Close.  Purchaser, as of the Closing Date, will have the financial ability to close and the ability to do so as outlined in this Agreement.

6.7     No Other Representations or Warranties; Schedules.  Except for the representations and warranties contained in this Article VI (as modified by the Schedules hereto), neither Purchaser nor any other Person makes any other express or implied representation or warranty with respect to Purchaser or the transactions contemplated by this Agreement, and Purchaser disclaims any other representations or warranties, whether made by Purchaser, any Affiliate of Purchaser or any of its officers, directors, employees, agents or other Representatives.  Except for the representations and warranties contained in this Article VI (as modified by the Schedules hereto), Purchaser disclaims all liability and responsibility for any representation, warranty, projection, forecast, statement, or information made, communicated, or furnished (orally or in writing) to Seller or its Representatives (including any opinion, information, projection, or advice that may have been or may be provided to Seller by any director, officer, employee, agent, consultant, or other Representative of Purchaser or any of its Affiliates).  The disclosure of any matter or item in any schedule hereto shall not be deemed to constitute an acknowledgment that any such matter is required to be disclosed or is material.  The representations and warranties of Purchaser are for diligence purposes only and do not survive the Closing, however, its disclaimers survive.

## ARTICLE VII
## BANKRUPTCY COURT MATTERS

7.1     Competing Transaction.

(a)     This Agreement is subject to approval by the Bankruptcy Court and the consideration by Seller of higher or otherwise better competing bids (each a "Competing Bid").

(b)     Prior to Seller furnishing any non-public information to any Person in connection with an offer regarding the sale or other disposition of all or any part of the Purchased Assets, Seller shall enter into a customary confidentiality agreement with such Person on terms no less favorable to Seller than those contained in Section 8.6.

(c)     Following the entry of the Bidding Procedures Order by the Bankruptcy Court and until the Contemplated Transactions are consummated, Seller is permitted to cause its

Representatives to market and initiate contact with, solicit or encourage submission of any inquiries, proposals or offers by, any Person (in addition to Purchaser and its Representatives) in connection with any sale or other disposition of all or any part of the Purchased Assets, alone or in connection with the sale or other disposition of any other asset of Seller. In addition, during such time period, Seller has the responsibility and obligation to respond to any inquiries or offers to purchase all or any part of the Purchased Assets and perform any and all other acts related thereto which are required under the Bankruptcy Code or other applicable law, including supplying information relating to the Property and the assets of Seller to prospective purchasers.

7.2     Bankruptcy Court Filings. As promptly as practicable following the execution of this Agreement, but in no event later than ten (10) Business Days after the execution of this Agreement, Seller shall file and seek the approval of the Bankruptcy Court of the Sale Motion and the Bidding Procedures Order. Purchaser agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order and the Bidding Procedures Order and a finding of adequate assurance of future performance by Purchaser, including, without limitation, furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Purchaser under this Agreement and demonstrating that Purchaser is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code. In the event the entry of the Sale Order or the Bidding Procedures Order shall be appealed, each party shall use their respective commercially reasonable efforts to defend against such appeal. In the event that an appeal is taken, or a stay pending appeal is requested from the Sale Order or the Bidding Procedures Order, Seller shall promptly notify Purchaser of such appeal or stay request and shall provide Purchaser within three (3) Business Days a copy of the relevant notice of appeal or order of stay. Seller shall also provide Purchaser with written notice of any motion or application filed in connection with any appeal from either of such orders.

7.3     Notice of Sale. Notice of the sale of Purchased Assets contemplated in this Agreement shall be in a form reasonably acceptable to Purchaser and be served in accordance with applicable Law (including, to the extent applicable, Rules 2002, 3016, 3017 and 6004 of the Federal Rules of Bankruptcy Procedure and any local rules or orders of the Bankruptcy Court) and the Bidding Procedures Order on all Persons required to receive notice under applicable Law.

## ARTICLE VIII
## COVENANTS

8.1     Access to Information. Subject to the other provisions of this Article 8, Seller agrees that, prior to the Closing Date, Purchaser shall be entitled, through its Representatives, to make such investigation of the assets, properties and operations of the Property and such examination of the books and records of Seller pertaining to the Property, the Purchased Assets and the Assumed Liabilities as it reasonably requests and to make extracts and copies of such books and records; it being understood, however, that the foregoing shall not entitle Purchaser to access any books, records or Documents the disclosure of which by Seller to Purchaser would violate (A) any agreement or obligation of confidentiality to which Seller is a party or is bound prior to the date hereof or (C) any obligation of confidentiality by which Seller is bound under applicable Law. Any such investigation and examination shall be conducted during regular

business hours upon reasonable advance notice and under reasonable circumstances, any request for such examination shall be made to one a Persons, identified by Seller in advance to the receipt of such request, and any access to any of the Property by Purchaser must be approved by one of such Persons, and Purchaser's access to such information shall be subject to any restrictions on disclosure by Seller to Purchaser or use of the information contained therein by Purchaser applicable pursuant to any agreement to which Seller is a party or is bound prior to the date hereof or under applicable Law. Seller shall cause its Representatives to cooperate with Purchaser and its Representatives in connection with such investigation and examination, and Purchaser and its Representatives shall cooperate with Seller and its Representatives and shall use its commercially reasonable efforts to minimize any disruption to Seller's business and operations, including the Property. Notwithstanding anything herein to the contrary, Seller shall not be required to permit any such investigation or examination if, and to the extent that, Seller, upon advice of counsel, determines that such investigation or examination by Purchaser would or is reasonably likely to result in a loss of any attorney-client or attorney work product privilege available to Seller.

     8.2    <u>Conduct of the Property Pending the Closing</u>.

     (a)    Prior to the Closing, except (1) as required by applicable Law, (2) as otherwise expressly contemplated by this Agreement or (3) with the prior written consent of Purchaser (which consent shall not be unreasonably withheld, delayed or conditioned), Seller shall: (i) use its commercially reasonable efforts to (A) maintain the Purchased Assets in good working order and condition consistent with past practices, ordinary wear and tear excepted and (B) maintain the insurance coverage currently in place with respect to the Purchased Assets (or comparable replacement coverage); and (ii) comply in all material respects with all Laws and Orders pertaining to the Property;

     (b)    Except (1) as required by applicable Law, (2) as otherwise expressly contemplated by this Agreement or (3) with the prior written consent of Purchaser (which consent shall not be unreasonably withheld, delayed or conditioned), Seller shall not, solely as it relates to the Property:

     (i)    subject any of the Purchased Assets to any Lien, except for Permitted Encumbrances; <u>provided</u>, <u>however</u>, that nothing herein shall prevent Seller from granting any Lien on Purchased Assets in connection with any debtor-in-possession financing approved by the Bankruptcy Court;

     (ii)    acquire or lease any material properties or assets that would be Purchased Assets or sell, assign, license, transfer, convey, lease or otherwise dispose of any of the Purchased Assets (except pursuant to an existing Contract for fair consideration in the Ordinary Course of Business or for the purpose of disposing of obsolete or worthless assets);

     (iii)    cancel or compromise any material debt or claim or waive or release any material right of Seller that constitutes a Purchased Asset except in the Ordinary Course of Business;

(iv)     enter into, modify or terminate any labor or collective bargaining agreement or through negotiation or otherwise, make any commitment or incur any liability to any labor organization;

(v)     other than in the Ordinary Course of Business, remove any Tangible Personal Property used in the Ordinary Course of Business without replacing such property with substantially equivalent or better property; or

(vi)     agree to do anything prohibited by this Section 8.2(b).

(c)     Seller shall notify Purchaser of any written notice given prior to Closing to any other party to a Material Contract that such party is in default thereunder or in breach thereof, which default or breach remains uncured, or any notice of termination thereof.  For purposes of this Agreement, a "Material Contract" means any Contract which is not terminable by either party upon less than 60 days notice and which evidences a payment obligation of Seller in excess of $50,000.

8.3     Consents and Licenses; Insurance.

(a)     Seller shall use its commercially reasonable efforts, and Purchaser shall cooperate with Seller, including, without limitation, by taking the actions referred to in Section 8.4, to obtain at the earliest practicable date all consents, approvals, authorizations, waiver and Orders required to be obtained by Seller (including all consents listed in Schedule 5.3(c)) and to give at the earliest practicable date any notices required to be given by Seller, in order for Seller to consummate the transactions contemplated by this Agreement on the terms and in the manner provided hereby; provided, however, that Seller shall not be obligated to pay any consideration therefor to any third party from whom any such item is requested (other than filing or application fees payable to any Governmental Authority) or to initiate any litigation or legal proceedings to obtain any such item except as otherwise provided by Section 8.4. Purchaser shall use its commercially reasonable efforts, and Seller shall cooperate with them, including by taking the actions referred to in Section 8.4 to obtain at the earliest practicable date all consents, approvals, authorizations, waivers, Orders, and licenses required to be obtained by Purchaser, and to give at the earliest practicable date any notices required to be given by Purchaser, in order for Purchaser to consummate the transactions contemplated by this Agreement on the terms and in the manner provided hereby and to operate the Property after the Closing; provided, however, that Purchaser shall not be obligated to pay any consideration therefor to any third party from whom any such item is requested (other than filing or application fees payable to any Governmental Authority) or to initiate any litigation or legal proceedings to obtain any such consent or approval except as otherwise provided by Section 8.4.   Other than Cure Amounts to be paid by Purchaser pursuant to Section 2.5, nothing contained herein shall require Seller to expend any funds in order to remove or eliminate any Lien on any Purchased Asset in order to deliver such Purchased Asset to Purchaser pursuant to this Agreement free of such Lien;

(b)     As of the Closing, Purchaser shall have appropriate insurance coverage in place for the Property consistent with what would be maintained under good industry business practices.

8.4    Consents and Approvals.

(a)    The parties recognize and agree that time is of the essence for the closing of the Contemplated Transactions. Purchaser shall cooperate with Seller, on an expedited basis, in making all required notices and applications, so that the parties may receive all approvals required to consummate the Contemplated Transactions.

(b)    Each of Purchaser and Seller shall use its reasonable best efforts to furnish to each other all information required for any application or other filing to be made pursuant to any applicable Law in connection with the Contemplated Transactions contemplated by this Agreement. Each such party shall promptly inform the other parties of any material oral communication with, and provide copies of written communications with, any Governmental Authority regarding any such filings or any such transaction. No such party shall independently participate in any formal meeting with any Governmental Authority in respect of any such filings, investigation, or other inquiry without giving the other parties prior notice of the meeting and, to the extent permitted by such Governmental Authority, the opportunity to attend and/or participate.

8.5    Further Assurances. Each party shall use its commercially reasonable efforts to (i) take all actions necessary or appropriate to consummate the transactions contemplated by this Agreement and (ii) cause the fulfillment at the earliest practicable date of all of the conditions to their respective obligations to consummate the transactions contemplated by this Agreement. Without limiting the generality of the foregoing, promptly after the discovery by Seller or any of its Affiliates after the Closing of any item included within the definition of Purchased Assets but not transferred, conveyed or assigned to Purchaser, (i) Seller will deliver written notice to Purchaser of the existence and non-transfer, non-conveyance or non- assumption of such item and provide Purchaser with all the information in Seller's possession about, and with access to such item as Purchaser may reasonably request, and (ii) if requested by Purchaser, Seller shall and shall cause their respective Affiliates to, use commercially reasonable efforts to transfer, convey or assign to Purchaser such item in the manner and on the terms and conditions as applicable to a Purchased Asset. In addition, if Seller or its Affiliate after the Closing receives payment on any account receivable that is a Purchased Asset, it shall as soon as practicable remit such amount received to Purchaser, together with such information identifying the account to which such payment relates as is reasonably available to Seller, and, if Purchaser or its Affiliates after the Closing receives payment on any account receivable that is an Excluded Asset it shall as soon as practicable remit such amount received to Seller, together with such information identifying the account to which such payment relates as is reasonably available to Purchaser. The provisions of this Section 8.5 shall survive the Closing.

8.6    Confidentiality. From and after the date hereof, Purchaser shall, and shall cause its Representatives to maintain in confidence, not disclose to any third party without the prior written consent of Seller, and not use to the detriment of Seller, any Confidential Information relating to or obtained from Seller or its Representatives. For purposes of this Section 8.6, "Confidential Information" shall mean any information that is confidential or proprietary in nature that is related to the Purchased Assets, the Assumed Liabilities, the Property, the Excluded Assets, or the Excluded Liabilities, including methods of operation, patient information, prices, fees, costs, know-how, marketing methods, plans, personnel, suppliers,

competitors, markets or other specialized information or proprietary matters; provided, however, that Confidential Information does not include, and there shall be no obligation hereunder with respect to, information that (i) becomes generally available to the public other than as a result of a disclosure by Purchaser or any of its Representatives, (ii) becomes available to Purchaser on a non-confidential basis from a source other than Seller or its Representatives, provided that such source is not known by Purchaser to be bound by a confidentiality agreement with, or other obligation of secrecy to, Seller, (iii) is lawfully received by Purchaser from a third party having the right to disseminate Confidential Information without restriction on disclosure or (iv) can be shown by Purchaser through written documents or evidence maintained by Purchaser to have been independently developed by either of them; and provided further, that upon the Closing by Purchaser, the restrictions contained in this Section 8.6 shall not apply to confidential or proprietary information related primarily to the Purchased Assets and the Assumed Liabilities. Purchaser may disclose any of Confidential Information to its Representatives who need to know it for the purpose of effectuating the Contemplated Transactions and who agree to keep it confidential. Purchaser shall instruct its Representatives having access to Confidential Information of such obligation of confidentiality. If Purchaser or anyone to whom it has transmitted Confidential Information subject to the confidentiality obligations herein becomes legally compelled to disclose any of such Confidential Information, Purchaser shall provide the respective Seller with prompt notice prior to making any disclosure so that Seller may seek a protective order or other appropriate remedy. If such protective order or other remedy is not obtained, or such Seller waives compliance with the provisions of this Section 8.6, Purchaser shall furnish only that portion of Confidential Information that it is advised by written opinion of counsel is legally required to be disclosed. The obligations contained in this Section 8.6 shall survive the Closing and are in addition to any separate confidentiality agreements between Seller and Purchaser.

8.7    Publicity. Each of Seller and Purchaser agrees that it shall not issue any written press release concerning this Agreement or the transactions contemplated hereby without obtaining the prior written approval of either Purchaser or Seller, as applicable, which approval will not be unreasonably withheld, delayed or conditioned, unless, in the judgment of such issuing party upon advice of counsel, disclosure is otherwise required by applicable Law or by the Bankruptcy Court with respect to filings to be made with the Bankruptcy Court in connection with this Agreement, provided that such party that intends to make such release shall use its commercially reasonable efforts consistent with such applicable Law or Bankruptcy Court requirement to consult with the other parties with respect to the text thereof.

8.8    Supplementation and Amendment of Schedules. Each of the parties may, with the prior written consent of the other party, include and exclude, from time to time and at any time, in the Schedules and Exhibits any items and/or facts that it subsequently discovers. No such supplement or amendment shall have any effect on any representation or warranty contained herein or upon the satisfaction of the condition to closing set forth in Section 10.1(a) or 10.2(a), as applicable; provided, however, if the Closing shall occur, then Purchaser shall be deemed to have waived any right or claim pursuant to the terms of this Agreement or otherwise, including pursuant to Article XI hereof with respect to any and all matters disclosed pursuant to any such supplement or amendment at or prior to the Closing.

8.9     Cooperation.  Seller and Purchaser agrees to reasonably cooperate with each other, from the date hereof up through and following the Closing Date, in good faith, in an effort to satisfy all further conditions, undertakings and agreements contained in this Agreement.

8.10     Repair of Damage; Condemnation

(a)     In the event that between the date hereof and the Closing Date, there is any damage to any Tangible Personal Property or real property that is a Purchased Asset, Purchaser shall accept the Purchased Assets in their then-current condition and proceed with the Closing, in which case Purchaser will be entitled to an assignment of all of the Seller's rights to any insurance proceeds covering such damage.

(b)     Seller shall give Purchaser prompt notice if any Tangible Personal Property or real property that is a Purchased Asset is (i) taken by a Governmental Authority where Seller reasonably estimates that the value of the property taken is equal to or exceeds Fifty Thousand Dollars ($50,000) or (ii) damaged or destroyed where Seller reasonably estimates that the damage to the property is equal to or exceeds Fifty Thousand Dollars ($50,000).

(c)     If after the date hereof and prior to the Closing, either (i) all or any material portion of the Purchased Real Property is condemned or taken by eminent domain (or is the subject of a pending or contemplated condemnation proceeding or taking by eminent domain which has not been completed), or (ii) any zoning, variance or similar Law affecting any significant portion of the Purchased Real Property is changed, Seller shall promptly give Purchaser reasonably detailed notice of such condemnation, taking or change and Purchaser shall have the option to terminate this Agreement by giving notice to Seller within twenty (20) days after the receipt of such Seller notice.  Upon the giving of such notice by Purchaser, Purchaser shall be entitled to the immediate return of the Escrowed Funds (together with any interest earned thereon), and, upon return of the same to Purchaser neither Seller nor Purchaser shall have any further obligation or liability hereunder.  If Purchaser does not exercise its option to terminate this Agreement as set forth in this Section 8.10(c) then this Agreement shall remain in full force and effect without a reduction in the Purchase Price and Purchaser shall be entitled to any and all claims that Seller may have to condemnation awards and/or any and all causes of action with respect to such condemnation or taking of, or such change relating to the Purchased Real Property, and Seller shall pay to Purchaser at Closing, by certified or official bank check, an amount equal to all payments theretofore made with respect to such condemnation, taking or change.  For purposes of this paragraph, "material shall mean a condemnation or taking which, in Purchaser's reasonable judgment, shall have a Material Adverse Effect.

**ARTICLE IX**
**RESERVED**

**ARTICLE X**
**CONDITIONS TO CLOSING**

10.1     Conditions Precedent to Obligations of Purchaser.  The obligations of Purchaser to consummate the Contemplated Transactions as provided by this Agreement is subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions (any or all of

-27-

which may be waived by Purchaser in whole or in part to the extent permitted by applicable Law):

(a)     the representations and warranties of Seller set forth in this Agreement shall be true and correct in all material respects (without giving effect to any materiality or Material Adverse Effect qualifiers set forth therein) at and as of the Closing, except to the extent such representations and warranties expressly relate to an earlier date (in which case such representations and warranties shall be true and correct on and as of such earlier date) and Purchaser shall have received a certificate signed by an authorized officer of Seller, dated the Closing Date, to the foregoing effect, provided, however, that in the event any such representation or warranty has been breached the condition set forth in this Section 10.1(a) shall nevertheless be deemed satisfied unless the effect of all such breaches of representations and warranties taken together result in a Material Adverse Effect;

(b)     Seller shall have performed and complied in all respects with all obligations and agreements required in this Agreement to be performed or complied with by them prior to the Closing Date and Purchaser shall have received a certificate signed by an authorized officer of Seller, dated the Closing Date, to the forgoing effect, provided, however, that the condition set forth in this Section 10.1(b) shall be deemed satisfied unless all such failures to so perform or comply taken together results in a Material Adverse Effect; and

(c)     Seller shall have delivered, or caused to be delivered, to Purchaser all of the items set forth in Section 4.2.

10.2     Conditions Precedent to Obligations of Seller.     The obligation of Seller to consummate the Contemplated Transactions as provided by this Agreement are subject to the fulfillment, prior to or on the Closing Date, of each of the following conditions (any or all of which may be waived by Seller in whole or in part to the extent permitted by applicable Law):

(a)     The representations and warranties of Purchaser set forth in this Agreement qualified as to materiality shall be true and correct, and those not so qualified shall be true and correct in all material respects, at and as of the Closing Date as though made on the Closing Date, except to the extent such representations and warranties relate to an earlier date (in which case such representations and warranties qualified as to materiality shall be true and correct, and those not so qualified shall be true and correct in all material respects, on and as of such earlier date), and Seller shall have received a certificate signed by an authorized officer of Purchaser, dated the Closing Date, to the foregoing effect;

(b)     Purchaser shall have performed and complied in all material respects with all obligations and agreements required by this Agreement to be performed or complied with by them on or prior to the Closing Date, and Seller shall have received a certificate signed by an authorized officer of Purchaser, dated the Closing Date, to the foregoing effect; provided, however, that the condition set forth in this Section 10.2(b) shall be deemed satisfied unless all such failures to so perform or comply taken together prevent or materially delay the ability of Purchaser to perform their respective obligations under this Agreement or the ability of Purchaser to consummate the Contemplated Transactions; and

DAL 77,446,490.2

(c)     Purchaser shall have delivered, or caused to be delivered, to Seller all of the items set forth in Section 4.3.

10.3     Conditions Precedent to Obligations of Purchaser and Seller.  The respective obligations of the parties to consummate the Contemplated Transactions as provided by this Agreement are subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived by Purchaser and Seller in whole or in part to the extent permitted by applicable Law):

(a)     There shall not be in effect any Order by a Governmental Authority of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the Contemplated Transactions;

(b)     The Bankruptcy Court shall have entered the Bidding Procedures Order; and

(c)     The Bankruptcy Court shall have entered the Sale Order and the Sale Order shall have become a final and non order not subject to any stay.

10.4     Frustration of Closing Conditions.  No party may rely on the failure of any condition set forth in Section 10.1, 10.2 or 10.3, as the case may be, to excuse it from consummating the Contemplated Transactions if such failure was caused by such party's failure to comply with any provision of this Agreement.

## ARTICLE XI
## TRANSFER TAXES AND OTHER CLOSING

11.1     Transfer Taxes.  Purchaser shall pay any sales, use, stamp, documentary stamp, filing, recording, transfer or similar fees or taxes or governmental charges (including any interest and penalty thereon) payable in connection with the transactions contemplated by this Agreement, if any ("Transfer Taxes").

11.2     Assumption of Liabilities.  All Taxes, Liens and all other Assumed Liabilities affecting the Purchased Assets shall be assumed by Purchaser on the Closing Date and shall be the sole responsibility of Purchaser.

11.3     Purchase Price Allocation.  For tax purposes only, prior to the Closing Date, Seller and Purchaser shall agree in good faith upon an allocation of the purchase price and other consideration delivered hereunder (including the Assumed Liabilities) among the Purchased Assets in accordance with Section 1060 of the Code and, in accordance with such allocation, Purchaser shall prepare and deliver to Seller copies of Form 8594 and any required exhibits thereto (the "Asset Acquisition Statement").  Purchaser shall prepare and deliver to Seller from time to time revised copies of the Asset Acquisition Statement (the "Revised Statements") so as to report any matters on the Asset Acquisition Statement that need updating (including purchase price adjustments, if any) consistent with the agreed upon allocation.  To the extent that Seller disagrees with Purchaser's allocation in the Asset Acquisition Statement or the Revised Statements, Seller and Purchaser shall work in good faith to resolve any such disagreements.  If Purchaser and Seller cannot reach a final resolution of the matter, Purchaser and Seller will

-29-

jointly retain an independent financial expert to resolve any remaining disagreements, the cost of which shall be borne equally by the parties. The purchase price for the Purchased Assets shall be allocated in accordance with the Asset Acquisition Statement or, if applicable, the last Revised Statements, provided by Purchaser to Seller, and all income tax returns and reports filed by Purchaser and Seller shall be prepared consistently with such allocation.

11.4    Cooperation on Tax Matters.  The parties shall furnish or cause to be furnished to each other, as promptly as practicable, such information and assistance relating to the Purchased Assets and the Assumed Liabilities as is reasonably necessary for the preparation and filing of any tax return, claim for refund or other filings relating to Tax matters, for the preparation for any Tax audit, for the preparation for any Tax protest, for the prosecution or defense of any suit or other proceeding relating to Tax matters.

## ARTICLE XII
## MISCELLANEOUS

12.1    Expenses.  Except as otherwise provided in this Agreement, each party shall bear its own attorneys fees incurred in connection with the negotiation and execution of this Agreement and each other agreement, document and instrument contemplated by this Agreement and the consummation of the transactions contemplated hereby and thereby. All other fees, costs and expenses payable in connection with the transfer of the Purchased Assets to Purchaser including, without limitation, all title insurance premiums, escrow and title search fees, lien search fees, appraisal and environmental due diligence expenses, survey expenses, brokerage fees, commissions and similar compensation, and assumption fees, if any, shall be paid by Purchaser.

12.2    Injunctive Relief.  Damages at law may be an inadequate remedy for the breach of any of the covenants, promises and agreements contained in this Agreement, and, accordingly, any party hereto shall be entitled to injunctive relief with respect to any such breach, including specific performance of such covenants, promises or agreements or an order enjoining a party from any threatened, or from the continuation of any actual breach of the covenants, promises or agreements contained in this Agreement.  The rights set forth in this Section 12.2 shall be in addition to any other rights which a party may have at law or in equity pursuant to this Agreement.

12.3    Submission to Jurisdiction Consent to Service of Process.  Without limiting any party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 12.6 hereof; provided, however, that if the Bankruptcy Case has closed, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of _____ sitting in _____ County or the district court for the State of _____ sitting in _____ County and any appellate court from any thereof,

for the resolution of any such claim or dispute. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Each of the parties hereto hereby consents to process being served by any party to this Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 12.6.

12.4    Entire Agreement: Amendments and Waivers. This Agreement (including the schedules and exhibits hereto) and the Escrow Agreement represent the entire understanding and agreement between the parties hereto with respect to the subject matter hereof. This Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought. No action taken pursuant to this Agreement, including any investigation by or on behalf of any party, shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, covenant or agreement contained herein. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

12.5    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of _____ applicable to contracts made and performed in such State.

12.6    Notice. All notices and other communications under this Agreement shall be in writing and shall be deemed given (i) when delivered personally by hand (with written confirmation of receipt), or (ii) one business day following the day sent by overnight courier (with written confirmation of receipt), in each case at the following addresses (or to such other address as a party may have specified by notice given to the other party pursuant to this provision):

If to Purchaser to:                          If to Seller, to:

_____       _____
_____       _____
_____       _____
Attn: _____       Attn: _____
Facsimile: _____       Facsimile: _____
Phone: _____       Phone: _____

12.7    Severability.  If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any law or public policy, all other terms or provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party.  Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

12.8    Binding Effect Assignment.  This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.  A successor to Seller shall include Seller as a reorganized debtor.  Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any Person or entity not a party to this Agreement except as provided below.  No assignment of this Agreement or of any rights or obligations hereunder may be made by any party (by operation of law or otherwise) without the prior written consent of Purchaser and Seller and any attempted assignment without the required consents shall be void; provided, however, that Purchaser may assign its right to acquire any or all of he Purchased Assets and its other rights hereunder to an entity wholly owned by it that also assumes all of Purchaser's obligations hereunder (but such assumption shall not relieve Purchaser of its obligations hereunder) with the consent of Seller, which shall not be unreasonably withheld; and provided further, Purchaser may assign its right to acquire any or all of the Purchased Assets to a third Person at Closing. Upon any such permitted assignment, the references in this Agreement to Purchaser shall also apply to any such assignee unless the context otherwise requires. No permitted assignment of any rights hereunder and/or assumption of obligations hereunder shall relieve the parties hereto of any of their obligations.

12.9    No Personal Liability.  In entering into this Agreement, the parties understand, agree and acknowledge that no director, trustee, officer, manager, member, employee, shareholder, attorney, accountant, advisor or agent of any party hereto shall be personally liable or responsible to any other party or its Affiliates, directors, trustees, officers, managers, members, employees, shareholders, attorneys, accountants, advisors or agents for the performance of any obligation under this Agreement of any party to this Agreement or the truth, completeness or accuracy of any representation or warranty contained in, or statement made in, this Agreement or any document prepared pursuant hereto and that all obligations hereunder are those of the named parties only (but nothing contained herein shall limit the liability of any person for his or her fraudulent acts).

12.10   Counterparts.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

DAL 77,446,490.2

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first written above.

**SELLER:**

**[INSERT SIGNATURE BLOCK FOR SELLER]**

**PURCHASER:**

**[INSERT SIGNATURE BLOCK FOR PURCHASER]**

[SIGNATURE PAGE TO ASSET PURCHASE AGREEMENT]

*DAL 77,446,490.2*