# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| OPUS SOUTH CORPORATION, *et al.*,[1] | Case No. 09-11390 (MFW) |
| Debtors. | Jointly Administered |
| | Objections Due: 12/28/09 at 4:00 p.m.<br>Hearing Date: 1/4/10 at 2:00 p.m. |

## MOTION OF OPUS SOUTH CORPORATION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY OPUS SOUTH CORPORATION MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

Opus South Corporation, a debtor and debtor-in-possession in the above referenced bankruptcy case (the "Moving Debtor"), hereby moves the Court (the "Motion") for entry of an order pursuant to Section 1121(d) of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") (a) extending the period during which the Moving Debtor has the exclusive right to file a Chapter 11 plan (the "Exclusive Filing Period") by ninety (90) days through and including March 18, 2010, and (b) extending the period during which the Moving Debtor has the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods") through and including May 17, 2010, or 60 days after the expiration of the Exclusive Filing Period, as previously extended by the Court. In support of this Motion, the Moving Debtor respectfully states as follows:

---

[1] The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: Opus South Corporation (4928); Clearwater Bluff, L.L.C. (1608); Waters Edge One, L.L.C. (3936); and 400 Beach Drive, L.L.C. (0489). The mailing address for each debtor is 10350 Bren Road W, Minnetonka, Minnesota 55343.

DAL 77,628,692v8

# I.
## STATUS OF THE CASE AND JURISDICTION

1. On April 22, 2009 (the "Petition Date"), the Moving Debtor and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under the Bankruptcy Code. The Moving Debtor has continued in possession of its property and is operating and managing its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. No request has been made for the appointment of a trustee or examiner, and a creditors' committee has not been appointed in the Moving Debtor's case.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4. The statutory predicates for the relief requested herein are Sections 105 and 1121(d) of the Bankruptcy Code.

# II.
## BACKGROUND

5. The Moving Debtor was incorporated in Florida on or about December 8, 1981, and is a real estate development firm formerly headquartered in Atlanta, Georgia. The Moving Debtor and its subsidiaries have utilized their in-house expertise to develop office, industrial, retail, multi-family, government, and institutional real estate projects.

6. A more detailed factual background of the Moving Debtor's businesses and operations, as well as the commencement of the Moving Debtor's Chapter 11 case, is more fully set forth in the *Declaration of Anne Marie Solberg in Support of the Debtors' Chapter 11*

*Petitions and Requests for First-Day Relief* filed on the Petition Date and incorporated herein by reference.

7. The Debtors began their Chapter 11 cases hoping to maximize the value of their assets through a series of Section 363 sales of the various properties of each of the Debtors, pursuant to which their lenders would consent to the sale of the Debtors' properties, with a surcharge of the lenders' collateral to accomplish the sale of such collateral. During the course of their Chapter 11 cases, the Debtors and their lenders held extensive discussions as to whether a Section 363 sale or other form of transaction would generate the most value for the Debtors' assets. These discussions included alternatives such as (a) a Section 363 sale, (b) a sale through a plan of liquidation, (c) relief from the automatic stay to foreclose, (d) entry of a deed-in-lieu of foreclosure, (e) conversion of the case to a Chapter 7 case, and (f) funding of the Chapter 11 case to allow the Debtors to potentially sell their property at a later date.

8. Since the Petition Date, the Debtors have been diligently working with the Court, the U.S. Trustee's Office, legal counsel, lenders, and other parties-in-interest to maximize value for the Debtors' creditors. In addition to various cash collateral, protective advances, and sale motions prepared, filed, and approved by the Court, the Debtors have also spent considerable time addressing a variety of other business operational and administrative matters. For example, the Debtors spent considerable time and effort seeking first-day relief and thereafter had extensive negotiations with multiple utility providers regarding adequate protection and have worked through the process of opening and closing multiple bank accounts in order to comply with the U.S. Trustee's guidelines. Other substantive motions filed by the Debtors have included motions to (a) rejection executory contracts and unexpired leases, (b) retain ordinary course professionals, and (c) sell miscellaneous assets.

9. In addition, the Debtors and their professionals have spent considerable time addressing a variety of administrative matters, including (a) responding to multiple violations of the automatic stay, (b) addressing a variety of mechanics' lien issues, and (c) working through numerous property operation issues, including homeowner's association issues.

10. Further, the Moving Debtor held extensive negotiations with National City Bank ("National City"), lender for The Terraces at Suwanee project (the "Suwanee Project"), to determine which form of transaction would generate the most value for the assets of the Suwanee Project. On May 20, 2009, National City filed that certain *Motion of National City Bank for an Order: (I) Modifying and Terminating the Automatic Stay Pursuant to 11 U.S.C. Section 362(d) and Fed. R. Bankr. P. 4001 to Permit Exercise of Rights and Remedies Under Loan Documents and Applicable Non-Bankruptcy Law With Respect to the Suwanee Collateral; (II) Requiring the Debtors to Account for and Remit Cash and Other Proceeds of Suwanee Collateral; (III) Prohibiting Use of Cash Collateral Pursuant to 11 U.S.C. Sections 363(c)(2) and (e); and (IV) Granting Ancillary and Related Relief* as Docket No. 179, pursuant to which National City desired to modify and terminate the automatic stay to permit National City to foreclose upon the Suwanee Project's collateral. An order approving the Suwanee Project's foreclosure motion was negotiated with the Moving Debtor and entered on May 28, 2009, and National City thereafter foreclosed on the Suwanee Project.

11. On August 20, 2009, the Moving Debtor and certain of its affiliated Debtors filed a motion as Docket No. 543 requesting an extension of their exclusive period to file a Chapter 11 plan and an extension of their exclusive right to solicit acceptances thereof. Pursuant to an order entered by the Court on September 9, 2009, as Docket No. 610, the exclusive period for the Moving Debtor and certain of its affiliated Debtors to file a Chapter 11 plan was extended

DAL 77,628,692v8

through and including December 18, 2009, and their exclusive right to solicit acceptances thereof was extended through and including February 16, 2010.

## III.
## RELIEF REQUESTED

12. The Moving Debtor seeks the entry of an order pursuant to Section 1121(d) of the Bankruptcy Code (a) further extending the Exclusive Filing Period by ninety (90) days through and including March 18, 2010, and (b) further extending the Exclusive Solicitation Period through and including May 17, 2010, or 60 days after expiration of the Exclusive Filing Period, as extended.

## IV.
## BASIS FOR RELIEF

13. Pursuant to Section 1121(b) of the Bankruptcy Code, a debtor has the exclusive right to file a Chapter 11 plan during the first 120 days after the commencement of a Chapter 11 case. If a debtor files a plan during this period, pursuant to Section 1121(c)(3) of the Bankruptcy Code, an additional 60 day period is automatically granted during which the debtor may exclusively solicit acceptance of the plan.

14. Section 1121(d) of the Bankruptcy Code provides that the Court may extend these exclusive periods for cause. See 11 U.S.C. § 1121(d) ("[O]n request of a party in interest and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.").

15. While the Bankruptcy Code does not define the term "cause" in this context, it is well established that the decision to extend a debtor's exclusivity periods is committed to the sound discretion of the Bankruptcy Court and should be based upon the facts and circumstances of a particular case. See In re Sharon Steel Corp., 78 B.R. 762, 763 (Bankr. W.D. Pa. 1987);

DAL 77,628,692v8

First American Bank of New York v. Southwest Gloves and Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986); In re Reetz, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). Courts have looked to the legislative history of Section 1121(d) for guidance. See In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409 (E.D.N.Y. 1989); In re Amko Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996). Congress intended that the exclusive periods be of an adequate length, given the circumstances, for a debtor to formulate, negotiate, and draft a viable plan, without the disruption to the business that would occur with the filing of competing plans. As summarized in In re Public Service Co. of New Hampshire:

> [Section] 1121(d) provides a "for cause" standard in determining exclusivity extension requests. As might be inferred from such a general standard, the legislative intent has been construed to leave the question to the reorganization court in the exercise of its discretion and to promote maximum flexibility to suit various types of reorganization proceedings.

88 B.R. 521, 534 (Bankr. D. N.H. 1988); see H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 232 (1977) (emphasis added) (footnotes omitted); Amko Plastics, 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity); Gaines v. Perkins (In re Perkins), 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of ... [Section 1121(d)] is flexibility").

16. When determining whether cause exists for an extension of a debtor's exclusivity periods, courts have relied on a variety of factors, each of which may provide sufficient grounds for extending the periods. Factors considered by courts in reaching a determination have included: (a) the size and complexity of the case; (b) the necessity of sufficient time to negotiate and prepare adequate information; (c) the existence of good faith progress toward reorganization; (d) whether the debtor is paying its debts as they come due; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made

6

progress in negotiating with creditors; (g) the length of time the case has been pending; (h) whether the debtor is seeking the extension to pressure creditors; and (i) whether unresolved contingencies exist. See In re Express One Int'l Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); see also In re Adelphia, 342 B.R. 122, 131 (Bankr. S.D.N.Y. 2006) (while the court considered the factors, it focused on whether "debtors had made a good faith progress towards reorganization and whether the extension of exclusivity was sought to pressure creditors to submit to debtor's reorganization demands").

17. Considering these factors, the Moving Debtor submits that ample cause exists to extend the Exclusive Filing Period through and including March 18, 2010, and the Exclusive Solicitation Period through and including May 17, 2010.

18. The Moving Debtor and its non-Moving Debtor affiliates have worked diligently to administer their estates. Since the Petition Date, the Moving Debtor has focused on stabilizing properties, obtaining necessary funding, negotiating and consummating sales of assets, and negotiating various alternative exit strategies for each particular property with each property's particular lender.

19. The Moving Debtor is the management company for all of the Debtors whose Chapter 11 cases are still pending (and was the management company for all the affiliated Debtors whose cases have since converted). It provides employees and accounting services and conducts general business operations for all such Debtors. One affiliated Debtor, Waters Edge One, L.L.C., has filed a plan of reorganization and has scheduled a confirmation hearing for the middle of February, 2010. The Moving Debtor will need to continue to provide its management services to this affiliated Debtor through the effective date of confirmation of its plan. The Moving Debtor desires to keep its options available for an exit strategy for its case, including the

right to file a Chapter 11 plan, until all of the other affiliated Debtors for which it provides management services have finalized their Chapter 11 cases.

20. The Moving Debtor respectfully submits that the extension of the Exclusive Periods requested herein will not harm creditors or other parties-in-interest, as such parties will retain the right to seek to terminate such Exclusive Periods or to oppose any future requests for extensions of such Exclusive Periods. The Moving Debtor has made good faith progress in its case given the complexities involved.

21. The Moving Debtor is not seeking an extension of the Exclusive Periods to delay creditors or force them to accede to the Moving Debtor's demands. The Moving Debtor is keenly aware of the need to involve all parties-in-interest in this case. The Moving Debtor and its professionals consistently have conferred with and worked cooperatively with the secured lenders of its affiliates and subsidiaries, the United States Trustee, and other parties-in-interest on all major substantive and administrative matters in this case.

22. This is the second request for an extension of the Exclusivity Periods made by the Moving Debtor, whose case has been pending since April 22, 2009.

23. In light of the foregoing factors, the Moving Debtor's request for an extension is modest and justified. In fact, the extension requested by the Moving Debtor is well within the 18 and 20 month extension limits now set forth in Sections 1121(d)(2)(A) and (B) of the Bankruptcy Code.

24. For all of the foregoing reasons, the Moving Debtor respectfully submits that "cause" exists under Section 1121(d)(1) of the Bankruptcy Code and that the equities weigh strongly in favor of granting the Moving Debtor an extension of the Exclusive Periods as requested herein.

# V.
# NOTICE

25. The Moving Debtor has provided notice of this Motion to: (a) the Office of the United States Trustee; (b) the consolidated forty (40) largest unsecured creditors as set forth in the list filed with the Debtors' petitions; and (c) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

WHEREFORE, the Moving Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: December 17, 2009

GREENBERG TRAURIG, LLP

By: *Victoria W. Counihan*
Victoria W. Counihan (DE Bar No. 3488)
Sandra G. M. Selzer (DE Bar No. 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: counihanv@gtlaw.com
       selzers@gtlaw.com

-and-

Bryan L. Elwood
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-5941
Email: elwoodb@gtlaw.com

Counsel for the Debtors and
Debtors-in-Possession

DAL 77,628,692v8