## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| OPUS SOUTH CORPORATION, et al., | Case No. 09-11390 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 820, 852, 870, 877, and 891** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING WACHOVIA BANK, NATIONAL ASSOCIATION, AGENT'S FIRST AMENDED PLAN OF LIQUIDATION FOR WATERS EDGE ONE, L.L.C. PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE, AS MODIFIED**

WHEREAS, Wachovia Bank, National Association, in its capacity as administrative agent for itself and the other Lenders (as defined herein) (the "Agent") in the chapter 11 case (the "Chapter 11 Case") of Waters Edge One, L.L.C. (the "Debtor"),[1] on November 30, 2009 filed its Disclosure Statement for Lenders' Plan of Liquidation for Waters Edge One, L.L.C. Pursuant to Chapter 11 of the Bankruptcy Code, and attached thereto as Exhibit A was Lenders' Plan of Liquidation for Waters Edge One, L.L.C. Pursuant to Chapter 11 of the Bankruptcy Code (Dkt. 820); and

WHEREAS, on December 31, 2009, the Agent subsequently proposed and filed with the Bankruptcy Court the First Amended Disclosure Statement for Wachovia Bank, National Association, Agent's Amended Plan of Liquidation for Waters Edge One, L.L.C. Pursuant to Chapter 11 of the Bankruptcy Code (the "Disclosure Statement"), and attached thereto as Exhibit A, was Wachovia Bank, National Association, Agent's First Amended Plan of Liquidation for Waters Edge One, L.L.C. Pursuant to Chapter 11 of the Bankruptcy Code, (the "Plan") (Dkt. 870); and

---

[1] Capitalized terms used but not otherwise defined herein, shall have the meanings ascribed to such terms in the Plan (as defined herein). The rules of construction in section 102 of the Bankruptcy Code shall apply to this Confirmation Order.

WHEREAS, on January 6, 2010, the Court entered its Order (I) Approving the Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Lenders' Plan of Liquidation Under Chapter 11 Including (A) Fixing the Voting Record Date, (B) Approving Solicitation Packages and Procedures for Distribution Thereof, and (C) Approving Forms of Ballots and Establishing Procedures for Voting on the Plan; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures in Respect of Confirmation of the Plan; (IV) Confirming the Plan and (V) Granting Related Relief, (the "Disclosure Statement Approval Order") (Dkt. 877), and which order also approved the form of Ballots for voting on the Plan (the "Ballots"); and

WHEREAS, the Bankruptcy Court having entered that certain Order Approving Liquidation Analysis in Connection With First Amended Disclosure Statement for Wachovia Bank, National Association, Agent's First Amended Plan of Liquidation for Water's Edge One, L.L.C., dated January 14, 2010 (Dkt. 891); and

WHEREAS, the Declaration of Pamela G. Groff of Womble Carlyle Sandridge & Rice, PLLC, Agent's Balloting Agent Regarding Solicitation and Tabulation of Votes in Connection with the Wachovia Bank, National Association, Agent's First Amended Plan of Liquidation for Waters Edge One, L.L.C. Pursuant to Chapter 11 of the Bankruptcy Code, dated February __, 2010 (the "Groff Declaration"), having been filed on February____, 2010 (Dkt. __); and

WHEREAS, the Agent having filed its Memorandum of Law in Support of Confirmation of Wachovia Bank, National Association, Agent's First Amended Plan of Liquidation for Waters Edge One, L.L.C. Pursuant to Chapter 11 of the Bankruptcy Code (the "Memorandum of Law") (Dkt.___); and

WHEREAS, the Declaration of Natalie Anderson In Support of Wachovia Bank, National Association, Agent's First Amended Plan of Liquidation for Waters Edge One, L.L.C. Pursuant to Chapter 11 of the Bankruptcy Code, dated February 12, 2010 (the "Anderson Declaration"), having been filed on February 12, 2010 (Dkt. __); and

2

WHEREAS, on February 12, 2010, Wachovia filed certain additional documents including a certain Exit Loan Agreement, Pledge Agreement, the Plan "as modified" and a blackline showing changes from the previously filed Plan, the Liquidation Trust Agreement, (collectively referred to as the "Plan Supplement,") together with the Anderson Declaration, the Groff Declaration and the Memorandum of Law;  and

WHEREAS,  the Confirmation Hearing to consider confirmation of the Plan having been held before the Bankruptcy Court on February 17, 2010 and after due and sufficient notice given to holders of Claims against, and Interests in, the Debtor and other parties in interest in accordance with the Disclosure Statement Approval Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, as established by the affidavits of service filed with this Bankruptcy Court  prior to the Confirmation Hearing (collectively, the "Notice Affidavits") (Dkt. 904)  and upon consideration of all of the proceedings held before the Bankruptcy Court and after full consideration of: (i) each of the objections to confirmation of the Plan filed with this Court and not subsequently withdrawn, settled or deemed moot (the "Confirmation Objections"); (ii) the testimony proffered and/or adduced at the Confirmation Hearing; (iii) the other declarations and/or affidavits filed with the Bankruptcy Court; (iv) all other evidence proffered and/or adduced at, memoranda and objections filed in connection with and arguments of counsel made at, the Confirmation Hearing; and (v) the entire record of the Chapter 11 Case; and after due deliberation thereon, and good cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. <u>Findings and Conclusions</u>**.**  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitutes conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitutes findings of fact, they are adopted as such.

1649713v.1

B.     Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).  The Bankruptcy Court has jurisdiction over Debtor's Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334.  Approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and the Bankruptcy Court has jurisdiction to enter a final order with respect thereto.  Debtor is an eligible debtor under section 109 of the Bankruptcy Code.  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Agent is a plan proponent in accordance with section 1121(a) of the Bankruptcy Code.

C.     Chapter 11 Petition.  On April 22, 2009 (the "Petition Date"), Debtor commenced the Chapter 11 Case.  The Debtor was authorized to continue to operate its businesses and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No committee, trustee, or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code.

D.     Judicial Notice.  The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered and/or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Case.

E.     Burden of Proof.  The Agent has the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.  Agent has met such burden.

F.     Solicitation of Votes.  Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and all other provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.  All procedures to distribute the Ballots to the applicable holders of Claims and Interests and to tabulate the Ballots were fair and reasonable and were conducted in accordance

with the Disclosure Statement Approval Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

G.     Notice.  Agent has given proper and sufficient notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d).  Due, adequate and sufficient notice of the Confirmation Hearing, along with deadlines for voting on or filing objections to the Plan, has been given to all known holders of Claims and Interests, substantially in accordance with the procedures set forth in the Disclosure Statement Approval Order.  The notice of the Confirmation Hearing, the Disclosure Statement and appropriate Ballots were transmitted and served in compliance with the Disclosure Statement Approval Order and applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws and regulations, and such transmittal and service were adequate and sufficient under the circumstances.  Holders of Claims against, and Interests in, Debtor and parties in interest have had a reasonable opportunity to appear and be heard with respect thereto and accordingly no other or further notice is required.

H.     Subsequent Plan Modifications.  Adequate and sufficient notice of the Plan Supplement including any modifications to the Plan (the "Plan Modifications") have been given and no other or further notice is or shall be required and such Plan Modifications are approved in full.

I.     Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Agent as proponent of the Plan; thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(1)     Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  In addition to Administrative Claims and Tax Claims, which need not be classified, Article III of the Plan classifies four (4) Classes of Claims and Interests.  The Claims and Interests placed in each Class are substantially similar to the other Claims and Interests, as the case may be, in each such Class.

5

Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes of Claims and Interests do not unfairly discriminate between holders of Claims and Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(2) <u>Specified Unimpaired Classes (11 U.S.C § 1123(a)(2))</u>. Article IV of the Plan specifies Class 1 (Priority Claims) as an unimpaired Class of Claims under the Plan within the meaning of section 1124 of the Bankruptcy Code and specifies the treatment of Claims in that Class; thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(3) <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Article V of the Plan specifies Class 2 (Lenders Allowed Unsecured Claim), Class 3 (Allowed Unsecured Claims), and Class 4 (Interests) as impaired Classes of Claims and Interests under the Plan within the meaning of section 1124 of the Bankruptcy Code and Article V specifies the treatment of Claims and Interests in those Classes; thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(4) <u>No Unfair Discrimination (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment by the Debtor for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest; thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(5) <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, including but not limited to (i) the liquidation of the Debtor, (ii) the formation of the Liquidation Trust and appointment of the Liquidation Trustee and (iii) the transfer of the Debtor's assets to and vesting in the Liquidation Trust.

(6) <u>Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>. The Plan does not provide for the issuance of non-voting equity securities; thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

6

(7)     Designation of Directors, Officers and the Trustee (11 U.S.C. § 1123(a)(7)). As set forth in Article IV of the Plan, the identification of the Trustee is consistent with the interests of creditors, equity security holders and public policy; thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(8)     Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1)). As permitted by section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan designates (i) Class 1 (Priority Claims) as an Unimpaired Class of Claims, and (ii) Class 2 (Lenders Allowed Secured Claim), Class 3 (Allowed Unsecured Claims), and Class 4 (Interests) as Impaired Classes of Claims; thereby satisfying section 1123(b)(1) of the Bankruptcy Code.

(9)     Assumption and Rejection (11 U.S.C. § 1123(b)(2)). Article VIII of the Plan provides for the rejection of executory contracts and unexpired leases, other than those contracts and leases that may have been assumed pursuant to a separate order of the Bankruptcy Court, and meets the requirements of section 365(b) of the Bankruptcy Code; thereby satisfying section 1123(b)(2) of the Bankruptcy Code. There have been no objections filed by any party in interest to Debtor's rejection of executory contracts or unexpired leases pursuant to Article VIII of the Plan.

(10)     Preservation of Rights of Action (11 U.S.C. § 1123(b)(3)(B)). Section 1123(b)(3)(B) of the Bankruptcy Code provides that a plan may "provide for the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any claim or interest. Pursuant to Article XII of the Plan, the Plan preserves the Trustee's rights to enforce any rights and causes of action that the Debtor may hold against any entity including, but not limited to, the RMSSR Claims.

(11)     Modification of Rights of Holders with Secured Claims (11 U.S.C. § 1123(b)(5)). To the extent that the Plan modifies the rights of holders of secured Claims, it does so in accordance with section 1123(b)(5) of the Bankruptcy Code.

(12)     Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).  Each of the provisions of the Plan is appropriate and consistent with the applicable provisions of the Bankruptcy Code; thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(13)     Cure of Defaults (11 U.S.C. § 1123(d)).  The Plan does not provide for the assumption of any executory contract or lease of non-residential real property.  Based on the foregoing, section 1123(d) of the Bankruptcy Code is inapplicable.

J.     Proponent's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  Agent, as the Plan proponent, has complied with the applicable provisions of the Bankruptcy Code.

(1)     The Debtor is an eligible debtor under section 109 of the Bankruptcy Code.

(2)     The Debtor has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court.

(3)     The Agent, as plan proponent, has complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Bankruptcy Rules, any applicable non-bankruptcy law, rule and regulation, the Disclosure Statement Approval Order and all other applicable law, among other things, in transmitting the Solicitation Packages (as such term is defined in the Disclosure Statement Approval Order) and related documents and notices, conducting the solicitation and tabulation of the votes on the Plan.

K.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Plan (including the Plan Supplement and all documents necessary to effectuate the Plan and the transactions contemplated thereby) has been proposed in good faith and not by any means forbidden by law; thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  Such good faith is evident from the facts and record of the Chapter 11 Case, the Disclosure Statement, the formulation of the Plan, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Case.

1649713v.1

The Plan (including the Plan Supplement and all documents necessary to effectuate the Plan and the transactions contemplated thereby) and the Disclosure Statement were developed after analysis and negotiations involving numerous proposals, including proposals solicited by the Agent and the Debtor and were proposed with the legitimate and honest purpose of maximizing the value of the Debtor's estate for all holders of Claims against, and Interests in, the Debtor. Further, the Plan's classification, releases, exculpation, injunction and setoff provisions have been negotiated in good faith, are consistent with sections 105, 1122, 1123, 1129, and 1142 of the Bankruptcy Code, and are each necessary for the successful implementation of the Plan. Based on the foregoing, section 1129(a)(3) of the Bankruptcy Code is satisfied.

L.  <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by the Debtor for services or for costs and expenses of the Debtor's professionals in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable; thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

M.  <u>Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Agent has complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of any individual proposed to serve as a "successor" to the Debtor has been disclosed. Following Confirmation, the Debtor will have no officers or directors or voting trustee. The approval of the Liquidation Trust and the Liquidation Trustee, to the extent governed by section 1129(a)(5) is consistent with the interests of holders of Claims against, and Interests in, Debtor and with public policy; thereby satisfying section 1129(a)(5) of the Bankruptcy Code. To the extent available, the identity of any insider that will be employed or retained by the Liquidation Trust and the nature of such insider's compensation also have been fully disclosed.

N.  <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. Debtor is not subject to any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over

9

rates of Debtor. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Case.

O.     Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The liquidation analysis and other evidence proffered and/or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence and (iii) establish that each holder of an impaired Claim has accepted the Plan or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that such holder of a Claim would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date; thereby satisfying section 1129(a)(7) of the Bankruptcy Code.

P.     Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Class 1 (Priority Claims) is an unimpaired Class of Claims that is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. As evidenced by the Groff Declaration, Class 2 (Lenders Allowed Unsecured Claim) is an impaired Class of Claims and has voted to accept the Plan, without regard to the votes of insiders of the Debtor; thereby satisfying section 1129(a)(8) of the Bankruptcy Code. Class 3 is impaired and has not voted to accept the Plan.

Q.     Treatment of Administrative Claims, Allowed Tax Claims and Other Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Claims pursuant to Section 4.1(a) of the Plan satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code. The treatment of Allowed Tax Claims pursuant to Section 4.1(b) of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

R.     Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). As evidenced by the Groff Declaration, acceptance of the Plan by those Holders of Claims in Class 2 (Lenders' Allowed Unsecured Claim) entitled to vote on the Plan surpasses the requisite standards in both number and amount, as set forth in sections 1126(b) and (c) of the Bankruptcy Code, as determined without including any acceptance of the Plan by any insider (as that term is

10

defined in section 101(31) of the Bankruptcy Code); thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

    S. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The information in the Disclosure Statement, the Memorandum of Law, and the evidence proffered and/or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence and (iii) establishes that the Plan contemplates the liquidation of the Estate and is feasible and that there is a reasonable prospect of the Liquidation Trust being able to meet its financial obligations under the Plan and in the ordinary course; thereby satisfying section 1129(a)(11) of the Bankruptcy Code.

    T. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. Section 4.1 of the Plan provides that on the Effective Date, and thereafter as may be required, the Trustee shall pay all outstanding fees payable pursuant to section 1930 of title 28 of the United States Code; thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

    U. <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. The Debtor is not required to pay any retiree benefits. Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.

    V. <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>. The Debtor is not required by a judicial or administrative order, or by statute, to pay any domestic support obligations. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.

    W. <u>Debtor Is Not an Individual (11 U.S.C. § 1129(a)(15))</u>. The Debtor is not an individual, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.

    X. <u>No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>. The Debtor is a moneyed business, a commercial corporation, and/or a trust. Accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.

1649713v.1

Y.      Fair and Equitable; No Unfair Discrimination (11 U.SC. § 1129(b)).

Based upon the Plan, the Memorandum of Law and the evidence proffered and/or adduced at the

Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with

respect to any rejecting Class, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy

Code; thereby satisfying section 1129(b) of the Bankruptcy Code.   To the extent that any class

of unsecured creditors voted against the Plan, such class shall receive or retain on account of

such Claim property of a value, as of the Effective Date, equal to the allowed amount of such

Claim, or the Plan provides that no holder of an Interest or Claim that is junior to the Claims of

such class will not receive or retain under the Plan on account of such junior Claim or Interest

any property.

Z.      Only One Plan (11 U.S.C. § 1129(c)).  The Plan is the only plan filed

in the Chapter 11 Case, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable.

AA.      Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  As evidenced

by the Disclosure Statement, the Plan, the Memorandum of Law and other evidence proffered

and/or adduced at the Confirmation Hearing, the principal purpose of the Plan is not the

avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and no

Governmental Unit (as such term is defined in the Bankruptcy Code) has objected to the

confirmation of the Plan on any such grounds; thereby satisfying section 1129(d) of the

Bankruptcy Code.

BB.      Modifications to the Plan.  Any subsequent modifications to the Plan

are authorized by the Plan pursuant to Bankruptcy Rule 3019(a), and do not require additional

solicitation of the Plan or additional disclosure under section 1124 of the Bankruptcy Code.

CC.      Good Faith Solicitation (11 U.S.C. § 1125(e)).  The evidence

proffered and/or adduced at the Confirmation Hearing, together with the entire record of the

Chapter 11 Case (a) is persuasive and creditable, (b) has not been controverted by other evidence

and (c) establishes that the Releasees, to the extent applicable, (i) have acted in "good faith"

within the meaning of section 1125(e) of the Bankruptcy Code, in compliance with the

applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation and their participation in the activities described in sections 1125 and 1126 of the Bankruptcy Code and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation provisions set forth in Section 13.3 of the Plan; thereby satisfying section 1125(e) of the Bankruptcy Code.

DD.     Implementation.  All documents necessary to implement the Plan, including but not limited to those contained in the Plan Supplement, and all other relevant and necessary documents, have been developed and negotiated in good faith and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.  The consummation of the transactions contemplated by the Plan represent the exchange of adequate consideration for value and are not intended to hinder, delay or defraud creditors or any party-in-interest.

EE.     Releases, Exculpation and Injunction.  The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the releases, exculpation and injunction provisions set forth in Article XIII of the Plan.  As has been established here based upon the record in the Chapter 11 Case and the evidence proffered and/or adduced at the Confirmation Hearing, such provisions (i) were necessary to the formulation and implementation of the Plan, (ii) are consistent with sections 105, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and (iii) are fair and provide reasonable consideration for the limited third party releases. Wachovia and the Lenders have provided substantially all of the funds needed to

pay administrative costs and critically needed items during the course of this Chapter 11 Case, and has agreed to provide Exit Financing to pursue the RMSSR Claims.  Without these contributions it is highly likely that there would be no feasible plan and that the distribution and opportunity for future distributions to creditors would be materially reduced.

        FF.    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XIV of the Plan and to the extent provided therein and as contemplated herein.

        GG.    <u>Satisfaction of Confirmation Requirements</u>.  Based on the forgoing, the Plan satisfies the requirements for confirmation as set forth in section 1129 of the Bankruptcy Code.

## NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDICATED AND DECREED THAT:

        1.    <u>Findings of Fact and Conclusions of Law</u>.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein.

        2.    <u>Objections Resolved or Overruled</u>.  Except as expressly set forth herein, all objections to, responses to, and statements and comments, if any, in opposition to the Plan, other than those withdrawn, waived, or settled prior to or in the record of, the Confirmation Hearing are hereby overruled in their entirety on their merits. Any Claim asserted to be a Priority Claim, 11 U.S.C. §507(a)(4) if Allowed, shall be subject to the statutory cap of $10,950, including but not limited to any claim filed by Opus Architects & Engineers.  Any Claim asserted to be a Priority Claim arising  under 507(a)(7), if Allowed, shall be subject to the statutory cap of $2,415, including but not limited to the filed claim of the Jensen Family Trust.

        3.    <u>Notice of the Confirmation Hearing</u>.  Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Approval Order, was appropriate and

satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.

4. <u>Amendments to the Plan</u>. The Plan Modifications meet the requirements of sections 1127(a) and (c), as such modifications do not adversely affect the treatment of any holder's Claim or Interest within the meaning of Bankruptcy Rule 3019(a), and no further solicitation or voting is required.

5. <u>Solicitation</u>. The solicitation procedures as set forth in the Groff Declaration, complied with the Disclosure Statement Approval Order, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and applicable non-bankruptcy law.

6. <u>Confirmation of the Plan</u>. The Plan, together with each of its provisions, shall be and hereby is, approved and confirmed under section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement are authorized and approved. The terms of the Plan, including the Plan Supplement, are incorporated by reference into, and are an integral part of, this Confirmation Order. The Plan complies with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

7. <u>General Authorizations</u>. Except to the extent provided in the appropriate provisions of the General Corporation Law of the State of Delaware and section 1142(b) of the Bankruptcy Code, no additional action of the Liquidation Trust, or the Trustee shall be required to authorize the Liquidation Trust or the Liquidation Trustee to enter into, execute, deliver, file, adopt, amend, restate, consummate or effectuate, as the case may be, the Plan and any contract, instrument or other document to be executed, delivered, adopted or amended in connection with the implementation of the Plan.

8. <u>Binding Effect</u>. Except as expressly set forth in the Plan, on the date of and following entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind Debtor, the Liquidation Trust, all holders of Claims

15

against, and Interests in, the Debtor (irrespective of whether such Claims or Interests are impaired under the Plan or whether the holders of such Claims or Interests have accepted the Plan), each Person receiving, retaining or otherwise acquiring property under the Plan, any and all non-Debtor parties to executory contracts and unexpired leases with Debtor, any other party in interest in the Chapter 11 Case, any Person making an appearance in the Chapter 11 Case or any other party in interest in the Chapter 11 Case, and the respective heirs, executors, administrators, successors, predecessors, or assigns, if any, of any of the foregoing.

9.      Vesting of Assets.  Except as expressly set forth in the Plan, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor's estate shall vest in the Liquidation Trust free and clear of all Claims, liens, encumbrances, charges, and other interests, but subject to the first priority lien of the Agent for the benefit of the Lenders under the terms of the Pledge Agreement, DIP Financing Order  and Litigation Trust, and  the first priority lien created in favor of the Agent for the benefit of the Exit Lenders pursuant to the Exit Financing,  as may be applicable.  The first priority lien of the DIP Agent for the benefit of the DIP Lenders shall continue until the creation and implementation of the Liquidation Trust, and upon such creation, the Agent for the benefit of the Exit Lenders shall have a first priority lien on all assets of the Liquidation Trust; however the lien on Avoidance Actions and proceeds thereof shall be limited to the extent the Exit Financing is used for the purpose of prosecuting or investigating the Avoidance Actions.   The Liquidation Trust may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules in all respects, to the extent provided in the Plan and Liquidation Trust Agreement.

10.      Implementation of the Plan.  The Agent, the Debtor, or the Liquidation Trustee, as the context may require, shall be authorized and directed to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement, and to take such other actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan,

16

including all such actions delineated in Article VII of the Plan. On the Effective Date, the appointment and formation of the Liquidation Trust is hereby authorized, ratified and approved, and the Trustee with all its authority, duties and responsibilities, and is authorized and empowered to issue, execute, file, and deliver or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement, contemplated by the Plan, as a representative of the Debtor's estate.

11.    <u>Administrative Claims; Supplemental Bar Date</u>. The deadline by which any party holding an Administrative Claim accruing after the period covered by any prior Administrative Claim bar date and the date of Confirmation shall be thirty (30) days after the Confirmation Date, and a Notice of Confirmation provided for in decretal paragraph 36 of this Confirmation Order shall expressly provide as such, and shall be served upon all parties required in said paragraph 36. The Liquidation Trust may pay any Administrative Claim that accrued prior to the Effective Date in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court or any other person; provided, however, any such Administrative Claim to which the Trustee interposes an objection shall be determined by the Bankruptcy Court or settled by the Trustee and such holder and approved by the Bankruptcy Court after notice and hearing. All of the Debtor's professionals who were retained under the Bankruptcy Code and required to file fee applications shall file such final fee applications for fees and expenses incurred through the date of entry of the Confirmation Order within thirty (30) days of the Effective Date. Any objections to such filed fee applications shall be filed within thirty (30) days of the filing of the final fee applications and a hearing on such final fee applications shall be held at the next available omnibus hearing date after objections are due.

12.    <u>Substantial Contribution Compensation and Expenses</u>. No Person is entitled to an Allowed Claim for substantial contribution pursuant to sections 503(b)(3), (4), or (5) of the Bankruptcy Code. Any Person who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case must file and serve such application on counsel for the Liquidation Trustee and Agent, and as otherwise required by the Bankruptcy

17

Court, the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules on or before the Effective Date or be forever barred from seeking such compensation or expense reimbursement.

13.     Exemption from Certain Transfer Taxes and Recording Fees.  Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto, including the transfer of the Debtor's Assets to the Liquidation Trust as contemplated herein, and in that the Global Settlement and transfer of the Waters Edge Property was in contemplation of confirmation of the Plan, any subsequent transfer or sale of the Waters Edge Property, in bulk or any portion thereof, by the Agent, or by its assignee, or successor, including but not limited to Water's Edge Clearwater, LLC,  to any third party within twenty-four (24) months of the Effective Date, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Further, pursuant to section 1146(a) of the Bankruptcy Code, (i) the issuance, distribution, transfer, or exchange of any debt, Equity Security, or other interest in Debtor or Liquidation Trust; (ii) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment, or recording of any lease or sublease; or (iv) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other

18

similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this paragraph.

14.     Rejection of Executory Contracts and Unexpired Leases.  As provided in Section 8.1 of the Plan, all executory contracts and unexpired leases that (a) the Debtor entered into prior to the commencement of this Chapter 11 Case, (b) are executory as of the Effective Date, and (c) have not been assumed or rejected pursuant to Section 365 of the Bankruptcy Code prior to the Effective Date, shall be deemed rejected by the Debtor as of the Effective Date.

15.     Conditions to Effective Date.  The Plan shall not become effective unless and until the conditions set forth in Section 11.1 of the Plan have been satisfied or waived pursuant to Section 11.2 of the Plan.  In the event that one or more of the conditions specified in Section 11.1 of the Plan have not been satisfied or waived in accordance with section 11.2 of the Plan, (i) this Confirmation Order shall be vacated, (ii)  the Debtor, the Agent and all holders of Claims and/or Interests shall be restored to *status quo* as of the Confirmation Date as though the Confirmation Date never occurred and (iii) all of the Debtor's obligations with respect to Claims and Interests shall remain unchanged and nothing contained in the Plan or in this Confirmation Order shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtor or any other Person, or prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor or otherwise.

16.     Approval of the Liquidation Trust.  The formation, implementation and effectiveness of the Liquidation Trust is hereby approved and authorized, in a form substantially in conformity with Exhibit C, attached as a Plan Supplement, and incorporated herein, and Executive Sounding Board Associates is approved as the Liquidation Trustee.  Specifically, each of the following is approved:  (i) the transfer of all right, title and interest of the Debtor Assets to the Liquidation Trust on the Effective Date for distribution to the holders of Allowed Claims and

19

Interests in Classes 2, 3 and 4 (the "Beneficiaries") pursuant to and in accordance with <u>Exhibit C</u>, the Plan and this Confirmation Order; (ii) the treatment of such transfer for income tax purposes as the transfer of the Debtor Assets by the Debtor to the Beneficiaries followed by the transfer of such assets by the Beneficiaries to the Liquidation Trust in exchange for their respective beneficial interests in the Liquidation Trust; (iii) the treatment for all purposes, including federal income tax purposes, of the Beneficiaries as the deemed owners of their respective assets in the Liquidation Trust and as grantors of the Liquidation Trust; (iv) the treatment of the Liquidation Trust as a grantor trust for federal income tax purposes, except to the extent otherwise provided in <u>Exhibit C</u>; (v) the valuation of the transferred assets by the Liquidation Trustee hereafter and the use of such valuations by the Liquidation Trustee and the Beneficiaries for all federal income tax purposes; (vi) the management of the transferred assets by the Liquidation Trustee; (vii) the creation of Class 2 interests, Class 3 interests and Class 4 interests in the Liquidation Trust, each of which have the right to distributions of distinct Liquidation Trust assets pro tanto; and (viii) the distribution of the assets in the Liquidation Trust or the proceeds thereof to the Beneficiaries as set forth in the Plan, this Confirmation Order and <u>Exhibit C</u>.    The Liquidation Trustee is hereby determined to be the representative of the Debtor's Estate, for all purposes, including those set forth in 11 U.S.C. § 1123(b)(3)(B).   This Court further finds and determines that the pursuit of the RMSSR Claims by the Litigation Trustee and/or the Liquidation Trustee as an estate representative does not violate Florida state law, including any common law or statutory provision or any  public policy, or other applicable law or rule that limits or restricts the assignment or transfer of a tort claim by a plaintiff to a third party and that the Litigation Trustee or the Liquidation Trustee, as the case may be, will be pursuing the RMSSR Claims solely for the benefit of Beneficiaries of the Liquidation Trust, and further, that the transfer of the RMSSR Claims to the Liquidation Trust shall not be a defense by any party to the entitlement of the Liquidation Trustee to pursue and recover all or any part of the RMSSR Claims and to distribute the proceeds in accordance with the terms of the Plan.   The Litigation Trustee or the Liquidation Trustee, as the case may be, is hereby authorized to be substituted for the Debtor as the real party

20

in interest, as a matter of right, in any pending litigation in which the Debtor is a party, including, but not limited to the RMSSR Claims. The Liquidation Trustee, as the representative of the Estate, is hereby authorized to exercise all rights of removal of the Debtor or the Estate. In addition, the Liquidation Trustee may also seek removal of any action properly removable under 28 U.S.C. § 1441 or 28 U.S.C. § 1452, or other provision of applicable law. The time within which the Agent or Liquidation Trustee may seek removal is hereby extended to and including December 31, 2010. The Liquidation Trustee may seek further extensions of the removal deadline by motion served on the then-applicable list of persons having filed requests for notices in the Chapter 11 Case. The Liquidation Trustee shall be obligated to seek a final decree, pursuant to Bankruptcy Rule 3022, closing the case, and shall file any required post confirmation reports with the U.S. Trustee and pay any applicable fees due and owing to the U.S. Trustee and shall file any certificate of dissolution of the Liquidation Trust or other necessary documents under state law.

17.    Approval of Filing of Certificate of Dissolution of the Debtor. The filing by the Liquidation Trustee of the certificate of dissolution of the Debtor or the Order of Confirmation shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by the board of directors of the Debtor and expressly without the need to pay any franchise or similar taxes in order to effectuate such Dissolution.

18.    Approval of the Exit Financing. The Exit Financing as proposed by the Agent and Exit Lenders is hereby approved, including, but not limited to, the execution and delivery of the Exit Loan Agreement, the Pledge and Security Agreement, and all other documents and instruments necessary to effectuate, evidence, perfect, or consummate the Exit Financing. The Exit Financing may be used for the purposes stated therein, including but not limited to, the repayment in full of the DIP Facility, and the pursuit of the RMSSR Claims. The Liquidation Trustee is hereby authorized to grant all liens and security interests contemplated by the Exit Loan Agreement and the Pledge and Security Agreement, and all such liens shall be, and

21

are hereby declared to be, valid and enforceable, first priority encumbrances, mortgages and liens on all assets of the Liquidation Trust, without the necessity of filing any financing statements or other public record evidence of perfection of such liens and security interests.

19. <u>Exculpation</u>. Except as otherwise specifically provided in the Plan or the Plan Supplement, neither (1) the Debtor, its officers, directors, current or former employees, or representatives, (2) the Trustee, (3) the Agent, Lenders, the DIP Agent, the DIP Lenders, the Agent, the Exit Lenders, nor (4) any professional or advisors retained by the Debtor, the Trustee, the Agent, the Lenders, the DIP Agent, the DIP Lenders or the Agent or the Exit Lenders, (i) shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of this Chapter 11 Case, formulating, negotiating or implementing the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan (including the distributions), except for their gross negligence or willful misconduct, and (ii) in all respects shall be entitled to reasonably rely upon the advise of counsel with respect to their duties and responsibilities under the Plan; <u>provided however</u>, and for the avoidance of all doubt, neither the Plan nor this Confirmation Order exculpates Ruden, McClosky, Smith, Schuster & Russell, P.A., Mark Grant or any other defendant party to the RMSSR Claims, whether presently named or joined at a future date (except with respect to the other parties named in clauses (1) through and including (4) above), nor does it exculpate any party from its obligations and duties under the Global Settlement; and (b) the foregoing exculpation and limitation on liability shall not, however, limit, abridge or otherwise affect the rights, if any, of the Trustee to enforce, sue on, settle or compromise the Claims retained pursuant to Article XII of the Plan.

20. <u>Releases by Holders of Claims or Interests.</u> Conditioned on the occurrence of the Effective Date, and except for obligations created by, arising under, or

22

expressly preserved in the Plan, the Plan Supplement, the Global Settlement Agreement, the DIP

Facility, the Exit Financing and all documents evidencing or related to the Exit Financing, the

Pledge Agreement, or Confirmation Order, the distributions (if any) to be received by holders of

Allowed Claims or Allowed Interest, or contemplated, under the Plan are in full and final

satisfaction and settlement of any and all Released Claims such holders of Claims or Interests

may have against the Releasees, the Debtor's Estate, the Debtor the Trustee, the Litigation Trust,

the Liquidation Trust, the Estate assets, the Agent or the Lenders, the DIP Lenders, the Exit

Lenders and each of their professionals, attorneys, agents, representatives and employees, and

the assets contemplated under the Plan to satisfy Claims, and all such Released Claims are

released, and shall be deemed to have forever, fully and irrevocably been released other than the

rights of the Agent, the DIP Lenders or the Liquidation Trustee to enforce the Plan, the DIP Loan

Agreement and Pledge Agreement, and the contracts, instruments, and other agreements or

documents delivered thereunder, and provided however, that nothing contained in this Plan, nor

the confirmation of this Plan, shall release or discharge any obligation under the Global

Settlement Agreement, the Pledge Agreement, and the DIP Loan Agreement, or the Exit

Financing, and all liens granted to the DIP Lenders, all of which shall survive the confirmation of

the Plan and which may be assigned to the Exit Lenders, or otherwise created in favor of the Exit

Lenders.  All Claims by any Interest Holder are fully released and discharged.  In addition, and

for the avoidance of doubt, all releases previously granted pursuant to the Global Settlement

Agreement are confirmed and preserved by the Plan and ratified by this Confirmation Order.

Notwithstanding anything to the contrary in this Plan, nothing in the Plan shall affect, alter,

impair or diminish the rights of Wachovia, in its separate capacity as a lender to Calm Waters,

LLC, to pursue all rights, claims and remedies it may have with respect to Calm Waters,

including but not limited to any rights it may have under the Capital Funding Commitment

Letter, and the assertion of a deficiency claim against Calm Waters  as permitted by the Court's

order dated July 29, 2009, entitled Order (1) Approving Bidding Procedures in Advance of

Auction, (2) Approving Form and Manner of Notice of Proposed Cure Amounts, Auction, and

Final Hearing, and (3) Granting Related Relief with Respect to Certain Properties (the "Bidding Procedures Order," (Dkt. 494).

           21.    <u>Affirmation of Global Settlement and Mutual Releases</u>. Pursuant to the terms of the Global Settlement, incorporated into the Plan, and previously made binding by this Court, and which is hereby reaffirmed by this Confirmation Order, Waters Edge One, L.L.C., 400 Beach Drive L.L.C., Clearwater Bluff, L.L.C., Opus South Corporation (collectively the "<u>Debtors</u>") and Opus South Development, L.L.C. ("OSD"), on the one hand, and the Lenders and Wachovia, as the Agent of the Lenders on the other; and Waters Edge One, L.L.C., 400 Beach Drive L.L.C., Clearwater Bluff L.L.C., Opus South Corporation, OSD among and between one another, have, under the terms of the Global Settlement, mutually released each other from all claims arising with respect to the transactions related to Waters Edge, to any pledge of the properties of the Debtors (the "<u>Subject Properties,</u>") or to any other claims (including deficiency claims, except as provided below) related to the Subject Properties or the respective estates of the Debtors, which release was previously effective upon the entry of the order approving the Global Settlement Agreement, other than the covenants and promises contained in the Global Settlement Agreement, and other than the exceptions set forth below and the OSD Transfer, OSD Note and OSD Mortgage in order to preserve the benefit of the OSD Transfers, as such terms are defined in the Global Settlement Agreement. The claims previously released include, without limitation, all Avoidance Actions under section 544, 545, 547, 548, 549, 550, and 553(b) of the Bankruptcy Code, and any similar applicable state law, and "equities of the case" under sections 105, 506(c) and 552(b) against the Agent and Lenders. The release provided in the Global Settlement was, and is hereby again, made binding on any chapter 7 or chapter 11 trustee appointed in the Debtors' cases, as defined above, and OSD, provided however, that (a) such release shall not release any and all obligations due and owing to the DIP Lenders under the DIP Facility nor to the Exit Lenders under any Exit Financing, nor any obligation under the Global Settlement, nor the duties and obligations under the Plan or this Confirmation Order, all of which shall survive the confirmation of this Plan; (b) the release of

24

any residual deficiency claims against the Debtors' bankruptcy estates shall not apply to any claim arising under 502(h) or any right of set off or recoupment arising from the pursuit of any Avoidance Action, although all such claims have been irrevocably released and settled; and (c) the release of any residual deficiency claims against the Waters Edge bankruptcy estate shall not apply to the extent of the proceeds from both (i) the sale of the Subject Properties, and (ii) the RMSSR Claims.  Notwithstanding anything to the contrary set forth in the Plan or this Confirmation Order, the parties have expressly acknowledged and the Plan further confirms, that Wachovia has not and does not waive any rights it may have under the Capital Funding Commitment Letter other than as set forth in the Global Settlement under "Release of Guaranty and Funding Letter," including with respect to the debtor Calm Waters, L.L.C., provided further, that with respect to the debtor Calm Waters, L.L.C., Opus South Corporation shall not be deemed to have released Opus Corporation of any obligations under the Capital Commitment Funding Letter, and that nothing herein or in the Plan shall limit or impair the rights of Calm Waters with respect to such Capital Funding Commitment Letter.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing in the Plan or this Confirmation Order shall affect the rights of Wachovia, in its separate capacity as a lender to Calm Waters, LLC, to pursue all rights, claims and remedies it may have with respect to Calm Waters, including but not limited to any rights it may have under the Capital Commitment Funding Letter, and the assertion of a deficiency claim against Calm Waters  as permitted by the Court's order dated July 29, 2009, entitled Order (1) Approving Bidding Procedures in Advance of Auction, (2) Approving Form and Manner of Notice of Proposed Cure Amounts, Auction, and Final Hearing, and (3) Granting Related Relief with Respect to Certain Properties.  (the "Bidding Procedures Order," (Docket No.  494).

    22.  Successor Liability.  The Lenders and the Agent, and any Purchaser under any of the Sale Orders, and the Liquidation or Litigation Trustee do not, pursuant to the Plan or otherwise, assume, agree to perform, pay, or indemnify or otherwise have any responsibilities for any liabilities or obligations of the Debtor or any other party relating to or arising out of the

operations of or assets of the Debtor, whether arising prior to, on, or after the Effective Date. The Liquidation Trust, the Litigation or the Liquidation Trustee the Agent, and the Lenders are not, and shall not be, successors to the Debtor by reasons of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character, except that the Trustee and the Liquidation Trust shall assume the obligations specified in the Plan, the Liquidation Trust Agreement, the other Liquidation Trust Documents, and this Confirmation Order.

23.     Injunction.  Except as otherwise expressly provided in the Plan or in this Confirmation Order, all holders of Claims and Interests shall be permanently enjoined from commencing or continuing in any manner, any suit, action or other proceeding, on account of any Claim, Interest, obligation, debt, right, cause of action, remedy or liability released or satisfied or to be released or satisfied pursuant to the Plan or against any asset of the Debtor's Estate, the Waters Edge Property, the Litigation Trust or the Liquidation Trust which is subject to administration to pay Claims and Interests or contrary to the terms of the Sales Orders, and the sale free and clear of the Debtors' properties.  The "Sale Orders"  shall mean (i) the Order entered on or about October 7, 2009, entitled, Order (1) Approving Sale of Certain Assets of the Debtor Waters Edge One, L.L.C. Free and Clear of All Liens, Claims, Encumbrances, and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), (f), and (m) and (2) Granting Related Relief (the "Sale Order") (Dkt. No. 703) and (ii) the orders approving the sale of the assets of the Debtor 400 Beach (Dkt. No. 704) and Clearwater (Dkt. No. 705).  The Plan incorporates and adopts the provisions of the Sale Orders and enjoins any person or entity from taking any action, or pursuing any claim, in contravention of such Sale Orders.   Further, notwithstanding Confirmation of the Plan or this Confirmation Order, the automatic stay shall remain in place for the Debtor, its Estate, the Estate assets and the assets contemplated under the Plan to satisfy Claims.  Additionally, no holder of a Claim against the Debtor may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, the Debtor, its successors, property of the Estate or its property, the Litigation Trust, the Liquidation

26

Trust, the Purchasers under the Sale Orders, or the Trustee, except as expressly provided in the Plan. Provided however, that this injunction shall not pertain to nor affect any right under the Global Settlement Agreement, the Pledge Agreement or the DIP Facility, the Exit Financing, nor any lien granted thereunder.

          24.    <u>Compromise and Settlement</u>. Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise, settlement and satisfaction of all Claims and Interests. The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable, and in the best interests of the Debtor, its estate, and holders of Claims and Interests. In addition certain adjustments have been made to the Lenders' Allowed Unsecured Claim as a result of an agreement and compromise between the the Debtor and the Agent and Lenders. Prior to closing the sale of the Waters Edge Property (the "Closing"), the Agent and Lenders were made aware of two potential refunds (collectively, the "Refunds") owed to the owner of the Waters Edge Property resulting from the participation by Waters Edge in various government incentives programs. The Agent for the benefit of the Lenders asserted that the Lenders were entitled to all of the assets related to the property of Waters Edge. Waters Edge agreed to assign all of its rights to such Refunds to Agent for the benefit of the Lenders at Closing pursuant that certain Assignment of Licenses, Permits, Warranties and Intangibles dated October 16, 2009 (the "Assignment"). The first Refund is a refund of sales taxes on construction materials used in the construction of the Waters Edge Property by virtue of the Waters Edge Property being in a State of Florida "Enterprise Zone" (specifically, City of Clearwater Enterprise Zone #5202). The total amount of this Refund was $807,076.22. This amount was paid to Waters Edge directly by the State of Florida and was subsequently transferred by Waters Edge to Agent for the benefit of the Lenders on November 3, 2009. Pursuant to the Assignment, the Agent and Lenders agreed that their allowed unsecured

27

claim would be reduced by one dollar ($1) for every one dollar ($1) actually received by Agent and Lenders from the State of Florida in connection with the Enterprise Zone Program for the Waters Edge Property. Accordingly, the Agent for the benefit of the Lenders reduced the amount of their Allowed unsecured Claim by $807,076.22 as a result of the payments received from the State of Florida in connection with the Enterprise Zone Program. The second Refund is a refund for certain impact fees and public infrastructure improvements that is owed by the City of Clearwater in connection with that certain Development Agreement (Waters Edge Development) by and between the Community Redevelopment Agency of the City of Clearwater, Florida, a public body corporate and politic of the State of Florida created pursuant to Part III, Chapter 163, Florida Statutes (the "City"), and OSD, dated December 19, 2006 (the "Development Agreement"). Pursuant to the Assignment, the Agent for the benefit of the Lenders agreed that their Allowed unsecured Claim would be reduced by $300,000 in exchange for the assignment to Lenders of all of OSD's rights under the Development Agreement at Closing. This was done instead of a dollar-for-dollar reduction as funds are actually received by the Agent for the benefit of the Lenders (as was done with the Enterprise Zone Program payments described in the previous paragraph) because it may take some time for the City to make its reimbursement payments under the Development Agreement. Both of these Settlements are hereby approved by this Confirmation Order.

25. <u>Payment of Statutory Fees</u>. On or before the Effective Date, all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code shall be paid, in cash by the Debtor. After the Effective Date, all such fees shall be paid by the Liquidation Trust until the earlier of (i) conversion or dismissal or (ii) closing of the Chapter 11 Case.

26. <u>Reversal/Stay/Modification/Vacatur of Confirmation Order</u>. Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of the Bankruptcy Court or any other court of competent jurisdiction, such reversal, stay,

28

modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor or the Trustee, as applicable, pursuant to the Plan and this Confirmation Order prior to the date Debtor or the Trustee, as applicable, received actual notice of the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the date the Liquidation Trustee receives actual written notice of the effective date of such reversal, stay, modification, or vacatur, shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

27. <u>Further Modifications</u>. The Plan may be amended, modified, or supplemented by the Trustee or the Agent and Lenders in the manner provided for by section 1127 of the Bankruptcy Code, or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, subject to those restrictions on modifications set forth in the Plan. In addition, after the Confirmation Date and subject to the restrictions set forth in the Plan, and, to the extent necessary, the Liquidation Trustee may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such matters as may be necessary or appropriate to carry out the purposes and intent of the Plan. Furthermore, entry of this Confirmation Order shall mean that all modifications or amendments to the Plan since the Solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

28. <u>Retention of Jurisdiction</u>. Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and all matters arising under, arising in, or

29

related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction over the matters set forth in Article XIV of the Plan. The Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Confirmation Order.

29. <u>Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent</u>. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent. As such, this Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Agent's consent; and (iii) nonseverable and mutually dependent.

30. <u>Governing Law</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control), and corporate governance matters.

31. <u>Applicable Nonbankruptcy Law</u>. Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

32. <u>Waiver of Filings</u>. Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtor to file any list, schedule, or statement with the Bankruptcy Court or the Office of the United States Trustee (except for monthly operating

30

reports or any other post-confirmation reporting obligation to the United States Trustee), is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

33. <u>Documents and Instruments</u>. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized and directed to accept any and all documents and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.

34. <u>Governmental Approvals Not Required</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan, the Plan Supplement and the Disclosure Statement.

35. <u>Estimation Proceedings and Other Rights</u>. Any and all rights of the Debtor, Agent and Liquidation Trustee under section 502(c) and section 502(e) of the Bankruptcy Code are reserved.

36. <u>Notice of Confirmation Order and Occurrence of Effective Date.</u> In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Agent or the Liquidation Trustee shall serve the Notice of Entry of the Confirmation Order, substantially in the form annexed hereto as <u>Exhibit D</u>, by first class mail, postage prepaid, to all parties who hold a Claim or Interest in the Bankruptcy Case, including the U.S. Trustee; <u>provided</u>, <u>however</u>, that such notice need not be given or served to any Person to whom Debtor mailed a notice of Confirmation Hearing but received such notice returned marked "undeliverable as addressed," "moved-left no forwarding address," or "forwarding order expired," or similar reason, unless Agent or Liquidation Trustee has been informed in writing by such Person of that Person's new mailing address. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order and the occurrence of the Effective Date.

37.     <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

38.     <u>Failure to Consummate Plan</u>.  In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code or otherwise to complete the administration of the Estate.

39.     <u>Discharge of Debtor's Professionals</u>.  As of the Effective Date all of Debtor's professionals shall be deemed discharged.

40.     <u>Waiver of Stay</u>.  The stay of this Confirmation Order provided by any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), and 6006(d)), whether for fourteen (14) days or otherwise, is hereby waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry upon the docket and upon satisfaction or waiver of the conditions set forth in section 11 of the Plan.

41.     <u>No Waiver</u>.  The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

42.     <u>Inconsistency</u>.  To the extent of any inconsistency between this Confirmation Order and the Plan, this Confirmation Order shall govern.

43.     <u>Headings</u>.  The headings contained in this Confirmation Order are used for the convenience of the parties and shall not alter or affect the meaning of the text of this Confirmation Order.

Dated:  February ____, 2010
     Wilmington, Delaware

_____
The Honorable Mary F. Walrath
United States Bankruptcy Judge